UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

_____
                                            )
BRIAN WRENN, *et al.*,                       )
                                            )
                    Plaintiffs,              )
                                            )
          v.                                )          Civil Action No. 15-cv-00162 (FJS)
                                            )
DISTRICT OF COLUMBIA, *et al.*,              )
                                            )
                    Defendants.              )
_____)

**DEFENDANTS' MOTION TO STAY
THE COURT'S MAY 18, 2015 ORDER PENDING APPEAL
AND MOTION FOR AN IMMEDIATE ADMINISTRATIVE STAY**

Pursuant to Fed. R. Civ. P. 7(b) and 62(c), the District of Columbia and Metropolitan

Police Chief Cathy Lanier (collectively, the District) move this Honorable Court to stay pending

appeal its Memorandum-Decision and Order dated May 18, 2015 [Doc. 13] (Order), which

preliminarily enjoins the District from enforcing its "good reason" requirement for the issuance

of a license to carry a concealed handgun in public. The District also moves the Court, in the

interim, to issue an administrative stay to last while this Court and, if necessary, the United

States Court of Appeals for the District of Columbia Circuit decide whether the Order should be

stayed pending appeal.  As discussed in more detail in the accompanying Memorandum of Points

and Authorities, a stay of the Order is warranted because the Order addresses serious

constitutional issues of first impression in this Circuit and the requested stay would preserve the

status quo while the District pursues an appeal of the Order.

Pursuant to LCvR 7(m), the undersigned discussed this motion with opposing counsel,

who stated that plaintiffs did not consent to the requested relief. A proposed Order is attached.

WHEREFORE, the District respectfully requests that the Court:

A.  Grant the District's Motion to Stay the Order Pending Appeal;

B.  Grant the District's Motion for Immediate Administrative Stay while the Court

considers the Motion to Stay Pending Appeal; and

C.  Grant the District such other and further relief as the nature of its cause may require.


DATE: May 26, 2015                    Respectfully submitted,

                                      KARL A. RACINE
                                      Attorney General for the District of Columbia

                                      ELIZABETH SARAH GERE
                                      Acting Deputy Attorney General
                                      Public Interest Division

                                      _____/s/ Toni M. Jackson_____
                                      TONI M. JACKSON, D.C. Bar No. 453765
                                      Section Chief, Equity Section


                                      _____/s/ Andrew J. Saindon_____
                                      ANDREW J. SAINDON, D.C. Bar No. 456987
                                      Senior Assistant Attorney General
                                      Equity Section
                                      441 Fourth Street, N.W., Sixth Floor South
                                      Washington, D.C. 20001
                                      Telephone: (202) 724-6643
                                      Facsimile: (202) 730-1470
                                      E-mail: andy.saindon@dc.gov

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

_____
                                        )
BRIAN WRENN, *et al.*,                  )
                                        )
                    Plaintiffs,         )
                                        )
        v.                              )        Civil Action No. 15-cv-00162 (FJS)
                                        )
DISTRICT OF COLUMBIA, *et al.*,         )
                                        )
                    Defendants.         )
_____)

**DEFENDANTS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
THEIR MOTION TO STAY THE COURT'S MAY 18, 2015 ORDER PENDING
APPEAL AND MOTION FOR AN IMMEDIATE ADMINISTRATIVE STAY**

**INTRODUCTION**

This Court should stay its May 18, 2015 Order (Order) while the District of Columbia

and Metropolitan Police Chief Cathy Lanier (collectively, the District) pursue an appeal of the

injunction entered against them.   In the interim, the Court also should grant an administrative

stay of its Order while this Court and, if necessary, the United States Court of Appeals for the

District of Columbia Circuit (the D.C. Circuit), decides whether the Order should be stayed

pending appeal. The May 18 Order struck the central element of the District's concealed-

carrying regime—the requirement that suitable applicants have a "good reason" to carry a deadly

weapon in public—as it applies to the plaintiffs.   In its Order, the Court misinterpreted and

misapplied the relevant case law and, as shown below, a careful balancing of the interests

demonstrates that a stay of the Order, and an immediate administrative stay, should issue so that

the District may pursue its appellate rights.

## BACKGROUND

Less than one year ago, in *Palmer v. District of Columbia*, No. 1:09-CV-1482, 2014 WL 3702854 (D.D.C. July 24, 2014), this Court struck down the District's longstanding prohibition on the public carrying of concealed handguns as violating the Second Amendment to the United States Constitution.  In response, the District of Columbia Council enacted legislation to permit the issuance of licenses to carry concealed handguns if, *inter alia*, the applicant has "good reason to fear injury to his or her person or property or has any other proper reason for carrying a pistol[.]"  D.C. Official Code § 22-4506(a).

Shortly after enactment of that legislation, plaintiffs commenced the instant lawsuit asserting that the "good reason"/"proper reason" requirement violates their rights protected by the Second Amendment. Compl. ¶ 36–40.  On February 6, 2015, plaintiffs filed a motion for a preliminary injunction seeking to enjoin the District from enforcing the "good reason"/ "proper reason" requirement pending a final disposition of the merits of their claims.  Doc. 6.

By Memorandum-Decision and Order dated May 18, 2015 [Doc. 13], the Court granted plaintiffs' motion for preliminary injunction and enjoined the District

> from enforcing the requirement of D.C. Code § 22-4506(a) that handgun carry license applicants have a 'good reason to fear injury to his or her person or property or has any other proper reason for carrying a pistol,' including, but not limited to, the manner in which that requirement is defined by D.C. Code § 7-2509.11 and 24 D.C.M.R. §§ 2333.1, 2333.2, 2333.3, 2333.4, and 2334.1, against Plaintiffs Brian Wrenn, Joshua Akery, Tyler Whidby, and other members of Plaintiff Second Amendment Foundation, Inc.

Order at 22.  The Court further enjoined the District "from denying handgun carry licenses to applicants who meet the requirements of D.C. Code 22-4506(a) and all other current requirements for the possession and carrying of handguns under District of Columbia law[.]" *Id.* at 23.

In so ruling, the Court found, as it did in *Palmer*, that "there exists a right under the Second Amendment to carry handguns in public for self-defense."  Order at 8.  The Court further found that plaintiffs are likely to succeed in demonstrating that the "good reason"/"proper reason" requirement impermissibly burdens this right because:  (1) the historical evidence presented by the District did not demonstrate that such a requirement is "longstanding" (*id.* at 9–11); (2) even if it were "longstanding," it places more than a *de minimis* burden on plaintiffs' Second Amendment rights (*id.* at 11–12); and (3) the District "failed to demonstrate that there is any relationship, let alone a tight fit" between this requirement and the District's interests in preventing crime and protecting public safety (*id.* at 16–17).  In assessing the "fit" between the "good reason"/"proper reason" requirement and the District's stated interests, the Court concluded that intermediate scrutiny was the appropriate standard to apply and that the District legislature's judgments were not entitled to deference.

The Court also found that plaintiffs are likely to suffer irreparable harm in the absence of a preliminary injunction because the Second Amendment protects "intangible and unquantifiable interests" that "cannot be compensated by damages" and the District's "good reason"/"proper reason" requirement violates plaintiffs' "Second Amendment right to bear arms for the purpose of self-defense every day that the District of Columbia continues to enforce it."  *Id*. at 18, 19. Finally, the Court held that the balance of equities and the public interest favors the grant of the preliminary injunction plaintiffs sought.  In assessing the "fit" between the "good reason"/"proper reason" requirement and the District's stated interests, the Court concluded that intermediate scrutiny was the appropriate standard to apply and that the District legislature's judgments were not entitled to deference.

## **LEGAL STANDARD**

In deciding whether to grant a stay pending appeal, the Court should consider whether (1) the District is likely to succeed on the merits; (2) irreparable harm to the District will result if the stay is not granted; (3) others will be harmed without a stay; and (4) the public interest favors granting the stay. *United States ex rel. Barko v. Halliburton Co.*, 4 F.Supp.3d 162, 168–69 (D.D.C. 2014) (citing *Cuomo v. U.S. Nuclear Regulatory Comm'n*, 772 F.2d 972, 974 (D.C. Cir. 1985)).  "[A] strong showing of one factor may excuse a relatively weaker showing on another." *Baker v. Socialist People's Libyan Arab Jamahirya*, 810 F.Supp.2d 90, 97 (D.D.C. 2011) (citing *Davis v. Pension Benefit Guar. Corp.*, 571 F.3d 1288, 1291 (D.C. Cir. 2009)).

The grant of a stay is a matter of "judicial discretion" that is "dependent upon the circumstances of the particular case." *Barko*, 4 F.Supp.3d at 169 (quoting *Nken v. Holder*, 556 U.S. 418, 419 (2009) (citations omitted)).  A court "'in the exercise of judgment' must "'weigh competing interest and maintain an even balance' between the court's interests in judicial economy and any possible hardship to the parties[.]" *Belize Social Dev. Ltd. v. Government of Belize*, 668 F.3d 724, 732–33 (D.C. Cir. 2012) (quoting *Landis v. North American Co.*, 299 U.S. 248, 254–55 (1936)).

Courts, however, have routinely held that a stay pending appeal is warranted in cases presenting difficult and unsettled legal questions. *See Akiachak Native Community v. Jewell*, 995 F.Supp.2d 7, 13 (D.D.C. 2014) (granting in part stay pending appeal) ("Though the Court disagrees with Alaska's position, and finds there to be a low likelihood of success on the merits, it recognizes that the case presented difficult and substantial legal questions . . . ."); *Ctr. for Int'l Envtl. Law v. Office of the U.S. Trade Rep.*, 240 F.Supp.2d 21, 22–23 (D.D.C. 2003) (granting stay pending appeal, where, despite risks of harm to plaintiffs, case clearly presented "a serious

legal question" on issue of first impression); *see also Klayman v. Obama*, 957 F.Supp.2d 1, 43 (D.D.C. 2013) (staying preliminary injunction pending appeal due to, *inter alia*, "the novelty of the constitutional issues[.]").  "Especially in cases of extraordinary public moment, the individual may be required to submit to delay not immoderate in extent and not oppressive in its consequences, if the public welfare or convenience will thereby be promoted." *Feld v. ASPCA*, 523 F.Supp.2d 1, 5 (D.D.C. 2007) (quoting *Dellinger v. Mitchell*, 442 F.2d 782, 786 (D.C. Cir. 1971)).

## ARGUMENT

## I.  THE COURT SHOULD GRANT A STAY PENDING APPEAL

### A.   THE DISTRICT IS LIKELY TO SUCCEED ON THE MERITS

The District satisfies each of the four factors supporting a stay, and the Court should grant a stay to preserve the *status quo* as it stood prior to the Court's Order, to enable the District to obtain clarification from a higher court on a crucial constitutional issue.  *See Nken*, 556 U.S. at 421 ("[A]s part of its traditional equipment for the administration of justice, a federal court can stay the enforcement of a judgment pending the outcome of an appeal.") (quoting *Scripps–Howard Radio, Inc. v. FCC*, 316 U.S. 4, 9–10 (1942)).  *See also Citizens for Responsibility & Ethics in Wash. v. Office of Admin., Executive Office of the President*, 593 F.Supp.2d 156, 159 (D.D.C. 2009) ("a stay pending appeal 'is preventative, or protective; it seeks to maintain the status quo pending a final determination of the merits of the suit.'") (quoting *Wash. Metro. Area Transit Comm'n v. Holiday Tours, Inc.*, 559 F.2d 841, 844 (D.C. Cir. 1977)).

With respect to the first of the four factors, the "substantial likelihood of success" "[i]t will ordinarily be enough that the [movant] has raised questions going to the merits so serious, substantial, difficult and doubtful, as to make them a fair ground for litigation and thus for more

deliberative investigation."  *Baker*, 810 F.Supp.2d at 97 (quoting *Holiday Tours*, 559 F.2d at 844); *see Al-Anazi v. Bush*, 370 F.Supp.2d 188, 193 n.5 (D.D.C. 2005) ("courts often recast the likelihood of success factor as requiring only that the movant demonstrate a serious legal question on appeal where the balance of harms strongly favors a stay") (citing, *inter alia*, *Cuomo*, 772 F.2d at 978)); *Holiday Tours,* 559 F.2d at 844–45 (noting that courts may issue a stay "when they have ruled on an admittedly difficult legal question and when the equities of the case suggest that the status quo should be maintained").

Here, the Court's Order ventures deep into uncharted territory on an issue of first impression about the Second Amendment—whether the government may impose a "good reason" requirement in licensing firearms to be carried in the public.  The constitutional issues are most certainly serious and substantial, as plaintiffs themselves argue.  *See, e.g.*, Complaint ¶38; Doc. 6-2 at 19–22.  In light of the novelty of the constitutional issues, the seriousness of the issues, and the preliminary stage of the litigation, the District is likely to succeed in demonstrating the need for a stay pending appeal while it pursues its appellate rights. *See Akiachak Native Community*, 995 F.Supp.2d at 13; *Al Maqaleh v. Gates*, 620 F.Supp.2d 51, 56 (D.D.C. 2009) (granting stay pending appeal where preservation of the status quo "squarely favors respondents" where "[t]he issues presented are novel and weighty—fundamental constitutional questions" that "present 'serious legal questions….that are so serious, substantial, and difficult as to make them a fair ground for litigation.'"). *See also Klayman v. Obama*, 957 F.Supp.2d 1, 43 (D.D.C. 2013) (staying preliminary injunction pending appeal due to, *inter alia*, "the novelty of the constitutional issues[.]").

Delving more deeply into the merits of the case, the District is quite likely to succeed on appeal.  Neither the Supreme Court nor the D.C. Circuit has determined whether the Second

Amendment extends beyond the home, nor has either court determined whether local governments may impose a "good reason" requirement on carrying deadly weapons in public. Only *one* circuit—the Seventh—has gone so far as to extend the Second Amendment right beyond the home.  *See Moore v. Madigan*, 702 F.3d 933 (7th Cir. 2012).  And, of the United States Circuit Courts of Appeal that have addressed the issue directly, *all* have approved the use of a "good reason" requirement for licenses to carry firearms in public.  But this Court dismisses, in a footnote, the carefully considered analyses of those Circuits, *Kachalsky v. Cnty. of Westchester*, 701 F.3d 81 (2d Cir. 2012); *Woollard v. Gallagher*, 712 F.3d 865 (4th Cir. 2013); and *Drake v. Filko*, 724 F.3d 426 (3d Cir. 2013) , in favor of two district court cases proffered by plaintiffs.  *See* Order at n.8.[1]  The Court's conclusions raise serious legal issues requiring appellate review based on such compelling legal authority.

Another consideration is that the Order relies heavily on the logic and analysis of the panel decision in *Peruta v. Cnty of San Diego*, 742 F.3d 1144 (9th Cir. 2014), but—as the District previously noted—that panel decision was vacated two months ago on March 15, 2015, when rehearing *en banc* was granted.  *See* Doc. No. 11; 781 F.3d 1106 (Mar. 26, 2015) (Thomas,

---

[1]      *Bateman v. Perdue*, 881 F.Supp.2d 709 (E.D.N.C. 2012), whatever its questionable relevance to the instant facts, no longer is good law in light of *Woollard*. And *Fletcher v. Haas*, 851 F. Supp. 2d 287 (D. Mass. 2012), similarly is irrelevant because it involved the ability of lawful resident aliens to carry firearms in an established public-carry regime.  While the First Circuit has not directly addressed the question at issue in this litigation, it has left some stark clues, explaining:

> While the Supreme Court spoke of a right of law-abiding, responsible citizens to keep and bear arms 'in case of confrontation' outside the context of an organized militia [citing *Heller* and *McDonald*], it did not say, and to date has not said, that *publicly* carrying a firearm unconnected to defense of hearth and home and unconnected to militia service is a definitive right of private citizens protected under the Second Amendment.

*Powell v. Tompkins*, 783 F.3d 332 (1st Cir. Apr. 15, 2015) (emphasis in original).

C.J., granting request for rehearing *en banc*). The Ninth Circuit has scheduled *en banc* oral argument for June 16, 2015.[2]  How "public carry" in the Ninth Circuit will be affected by further developments in *Peruta* is unclear, but these appellate developments should call for a cautionary approach by staying the Order here.

The District's demonstration of a reasonable fit between the "good reason" requirement and its undisputedly compelling interests in promoting public safety and reducing handgun violence, "at this point in the litigation and based on the current record," Order at 17, was at least as detailed as that presented and found sufficient in *Kachalsky*, *Drake*, and *Woollard*, and meets the "intermediate scrutiny" standard.[3]  An immediate stay of the injunction while the District pursues an appeal (and moves forward with developing the record in this Court) will keep in place the primary feature of this important public-safety measure.

Moreover, this Court's Order disregarded as "not relevant" evidence of the "longstanding" nature of public-carry regulation in other jurisdictions. Order at n.4.  This is contrary to persuasive case law.  *See Drake*, 724 F.3d at 434 ("We discern no hint in the Second Amendment jurisprudence of either the Supreme Court or this Court that the analysis of a particular regulation in a particular jurisdiction should turn entirely on the historical experience *of that jurisdiction alone.*" (emphasis added)); *see also Heller v. District of Columbia*, 670 F.3d

---

[2]     *See http://www.ca9.uscourts.gov/content/view.php?pk_id=0000000722*.

[3]     *Cf., e.g.*, Amicus Brief by State of California, *Peruta v. Cnty of San Diego*, No. 10-56971 (9th Cir. Apr. 30, 2015), at 4 ("Good cause requirements strike a permissible balance between enabling private individuals to carry concealed handguns on the person, even in urban or residential areas, if they can establish some particular need to do so for purposes of self-defense, and a legislative judgment that allowing the essentially unrestricted carrying of handguns in such areas makes the public, on balance, *less* safe.") (emphasis in original). *Available online at* http://cdn.ca9.uscourts.gov/datastore/general/2015/05/05/10-56971%20Amicus%204-30%20by%20State%20of%20California.pdf.

1244, 1253–55 (D.C. Cir. 2011) (discussing statutes in New York, Illinois, Georgia, Michigan, Oregon, California and Hawaii in finding that the requirement to register a handgun is "longstanding in *American* law") (emphasis added).  The Order also ignored the constitutionally significant difference between regulating activities in "the home" versus in public, a longstanding distinction that should have played a part in the Court's analysis. *See, e.g.*, *Kachalsky*, 701 F.3d at 94 ("Treating the home as special and subject to limited state regulation is not unique to firearm regulation; it permeates individual rights jurisprudence.").

In their motion, plaintiffs presented a single, 20-year-old study on defensive gun use generally, which the District amply demonstrated has been conclusively discredited.  *See* Doc. 6-2 at 22. *Cf.* Doc. 9 at 23.  The District detailed the many empirical studies and other evidence supporting the Council's (and other jurisdictions') legislative decision to impose a "good reason" requirement. *Id.* at 18–21. The Court *sua sponte* cited a single study that allegedly contradicts certain of the District's evidence, *see* Order at n.11, and noted, correctly, "that the empirical evidence on this issue is not conclusive." *Id.*  But even if the vast majority of the evidence here did *not* support the Council's conclusions, it was error for the Court to ignore it in favor of its own conclusions.  In assessing "fit," under the intermediate scrutiny standard, a court must afford "substantial deference to the predictive judgments" of the legislature because "[i]n the context of firearm regulation, the legislature is 'far better equipped than the judiciary' to make sensitive public policy judgments (within constitutional limits) concerning the dangers in carrying firearms and the manner to combat those risks." *Schrader v. Holder*, 704 F.3d 980, 990 (D.C. Cir. 2013) (quoting *Turner Broadcasting System, Inc. v. FCC*, 512 U.S. 622, 665 (1994), and *Kachalsky*, 701 F.3d at 97; *see also, e.g. Drake*, 724 F.3d at 439 ("Even accepting that there may be conflicting evidence as to the relationship between public handgun carrying and public

safety, this does not suggest, let alone compel, a conclusion that the 'fit' between New Jersey's individualized, tailored approach and public safety is not 'reasonable.'"); *Woollard*, 712 F.3d at 881 ("It is the legislature's job, not ours, to weigh conflicting evidence and make policy judgments.") (quoting *Kachalsky*, 701 F.3d at 89)); *id.* ("[W]e cannot substitute [our] views for the considered judgment of the General Assembly that the good-and-substantial reason requirement strikes an appropriate balance between granting handgun permits to those persons known to be in need of self-protection and precluding a dangerous proliferation of handguns on the Streets of Maryland.")

Similarly, the Order's finding that the District's "good reason" requirement is not directed at "dangerous people," Order at 14, misses its mark. The District's interests are not *only* in preventing known "dangerous people" from carrying guns in public; the District also has an important interest in reducing the total number of weapons carried in public in order to reduce the risks to other members of the public due to the disproportionate use of handguns in violent crime in public places. *See, e.g., Woollard*, 712 F.3d at 879 (carrying scheme "advances the objectives of protecting public safety and preventing crime because it reduces the number of handguns carried in public."); Amicus Brief by State of California, *supra*, at 8–9 ("[C]alifornia's licensing scheme regulating the carrying of concealed handguns strikes a permissible balance between allowing carrying in certain places and under certain circumstances, and protecting the public from the dangers posed by the proliferation of concealed weapons in public places.") (footnote omitted). *Cf. Kachalsky*, 701 F.3d at 99 ("[S]tudies and data demonstrat[e] that widespread access to handguns in public increases the likelihood that felonies will result in death and fundamentally alters the safety and character of public spaces.").

Congress long ago recognized these important interests, which do not depend on the known suitability of any *particular* applicant. *See, e.g., United States v. Walker*, 380 A.2d 1388, 1390 (D.C. 1977) ("Implicit in the statutory proscription of carrying a pistol without a license outside the possessor's 'dwelling house or place of business' is a congressional recognition of the inherent risk of harm to the public of such dangerous instrumentality being carried about the community and away from the residence or business of the possessor."). Handguns are capable of inflicting serious injury or death; indeed, that is precisely why people want to carry them. A "good reason" requirement suitably minimizes the risks of harm to the public by limiting when carrying is to be allowed.

### B.  THE DISTRICT WILL SUFFER IRREPARABLE HARM IN THE ABSENCE OF A STAY

Although the Court describes its injunction as "limited," it has enjoined the District from enforcing, as to the plaintiffs, the very heart of its statutory regime:  the imposition of a "good reason" requirement for those who want to carry firearms in public.  This injunction has important public safety consequences, if for no other reason than it will result in an increase in the number of guns carried publicly.

Moreover, "any time a State [or local government] is enjoined by a court from effectuating statutes enacted by the representatives of its people, it suffers a form of irreparable injury."  *New Motor Vehicle Bd. of Cal. v. Orrin W. Fox Co.*, 434 U.S. 1345, 1351 (1977) (Rehnquist, J., in chambers)*; see also Maryland v. King*, ___ U.S. ___, 133 S. Ct. 1, 3 (July 30, 2012) (Roberts, C.J., in chambers) (same).[4]  The District, like the States, has a strong interest in

---

[4]       *See also Strange v. Searcy*, 135 S. Ct. 940 (Feb. 9, 2015) (Thomas, J., dissenting):

When courts declare state laws unconstitutional and enjoin state officials from enforcing them, our ordinary practice is to suspend those injunctions from taking

enforcing its criminal laws.  *See, e.g., Grand Jury Proceedings of John Doe v. United States*, 842 F.2d 244, 248 (10th Cir. 1988) (holding that a claimed First Amendment privilege is "outweighed by the government's interest in investigating crimes and enforcing the criminal laws").

District residents, through their elected representatives, have made the decision that allowing carrying guns without "good reason" is inconsistent with public safety.  If the Court's injunction later is overturned, after licenses were issued without the "good reason" analysis, no relief will be available to remedy the harms caused to the District's regulatory scheme, not to mention any accidental or deliberate shootings that might have occurred in the interim from the presence of additional, concealed-carry guns. *See Church & Dwight*, 756 F.Supp.2d at 86 (irreparable harm may be shown where no "adequate compensatory or other corrective relief" will be available at a later date) (quoting *Virginia Petroleum Jobbers Ass'n v. Federal Power Comm.*, 259 F.2d 921, 925 (D.C. Cir. 1958)).

The Court suggests that the District is not enjoined from enacting or enforcing "appropriate time, place and manner restrictions," Order at 20, but the District's "good reason" requirement *is* just such a restriction.  The "time" chosen by the Council of the District of

---

effect pending appellate review. Although a stay is not a matter of right, this practice reflects the particularly strong showing that States are often able to make in favor of such a stay. Because States are required to comply with the Constitution, and indeed take care to do so when they enact their laws, it is a rare case in which a State will be unable to make at least some showing of a likelihood of success on the merits. States also easily meet the requirement of irreparable injury, for "'[a]ny time a State is enjoined by a court from effectuating statutes enacted by representatives of its people, it suffers a form of irreparable injury.'" The equities and public interest likewise generally weigh in favor of enforcing duly enacted state laws.

*Id.* (citations omitted).

Columbia is when an applicant has a good reason to fear for his or her safety, beyond a generalized desire for protection from unspecified future attack. *See District of Columbia v. Heller*, 554 U.S. 570, 626 (2008) (Second Amendment right is "not a right to keep and carry any weapon whatsoever in any manner whatsoever and for whatever purpose"). The "manner" is concealed carry, and the "place" is all public areas of the District of Columbia, with carefully delineated "sensitive" areas developed after extensive consultation with federal law enforcement authorities, reflecting the unique nature of public spaces in our Nation's Capital. *See* D.C. Official Code § 7-2507 (setting forth the "locations" and "circumstances" where public carry is prohibited). The Court's injunction upsets this carefully calibrated regulatory regime based on a novel legal theory at the preliminary injunction stage without the benefit of expert testimony and briefing on summary judgment, causing significant and irreparable harm to the District as it carries out its new firearms-licensing scheme.

The Court found that plaintiffs' irreparable harm could be "presumed" because, like the First Amendment, the Second Amendment "protects similarly intangible and unquantifiable interests" which "cannot be compensated by damages." Order at 18 (quoting *Ezell v. City of Chicago*, 651F.3d 684, 699 (7th Cir. 2011)). But surely District residents and visitors have an intangible and unquantifiable interest in safe public spaces—and there is no conceivable way that harm to those interests could be remedied in the event this Court's injunction is struck down on appeal. Furthermore, the Court's presumption is contrary to this Circuit's established precedent. *See Chaplaincy of Full Gospel Churches v. England*, 454 F.3d 290, 301 (D.C. Cir. 2006) ((holding that "in this [C]ourt, as in several others, there is no *per se* rule that a violation of [a constitutional right] *automatically* constitutes irreparable harm.") (emphasis in original)). *See also Sweis v. United States Foreign Claims Settlement Comm'n*, 950 F. Supp. 2d 44, 48 (D.D.C.

2013) ("[O]ur Court of Appeals has indicated that merely raising a constitutional claim is insufficient to warrant a presumption of irreparable injury.")

Finally, although the Court purported to apply the more-stringent "mandatory injunction" test to plaintiffs' request for emergency relief, *see* Order at 7 & n.3, it is not clear from the Order that it has done so.  Specifically, the Order does not indicate where or how plaintiffs made any showing of "extreme or very serious damage" or that they are "clearly entitled to immediate relief," as required by case law.  *In re: Guantanamo Bay Detainee Lit.*, 570 F.Supp.2d 13, 17 n.3 (D.D.C. 2008) (quoting *Veitch v. Danzig*, 135 F.Supp.2d 32, 35 (D.D.C. 2001)).  The "purpose of a preliminary injunction is merely to preserve the relative positions of the parties until a trial on the merits can be held." *Univ. of Texas v. Camenisch*, 451 U.S. 390, 395 (1981). This injunction does precisely the opposite—it gives plaintiffs the ultimate relief they seek at the beginning of the proceedings, to the prejudice of the District.

### C.  THE BALANCE OF THE EQUITIES FAVORS THE DISTRICT

The balance of the equities here favors a stay, which would preserve the status quo and allow for an orderly process, including appellate review, to determine the appropriate extent of "public carry," and, at the same time, limit the public's confusion and other unintended consequences flowing from the Court's Order.  The fact that this particular legal issue previously has not been addressed squarely by any controlling court militates in favor of a stay pending appeal.  *See Citizens for Responsibility & Ethics in Wash. v. Cheney*, 577 F.Supp.2d 328, 338 (D.D.C. 2008) (preliminary injunction granted where movant presented "a complex issue of first impression"); *Ctr. for Int'l Environmental Law*, 240 F.Supp.2d at 22–23 (stay warranted, *inter alia*, where "case presents an issue of first impression"); *see also Klayman*, 957 F.Supp.2d at 43–

44 (*sua sponte* staying preliminary injunction pending appeal, in light of, *inter alia*, "the novelty of the constitutional issues").

The balance of the equities favors the issuance of a stay. The risk of a gun-related tragedy—accidental or deliberate—by new licensees who have no particularized fear of any specific danger to their safety, outweighs plaintiffs' speculative fears about any imminent need to defend themselves from a random, public attack. Plaintiffs' fears are necessarily speculative— their theory, after all, is that they need this Court's assistance because they cannot show "good reason" to carry.

Finally, it is important to note that this Court only recently has declared affirmatively the right to carry a handgun in public in the District, after decades (if not centuries) without such a right. A brief delay in this Court's injunction is warranted while the parties obtain further clarification on the *scope* of that right.

### D. A STAY PENDING APPEAL SERVES THE PUBLIC INTEREST

The public interest is not served by the invalidation of the central component of the District's public-carry regime, the "good reason" requirement as to plaintiffs. *See Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008) ("In exercising their sound discretion, courts of equity should pay particular regard for the public consequences in employing the extraordinary remedy of injunction." (quoting *Weinberger v. Romero–Barcelo*, 456 U.S. 305, 312 (1982)).

"[W]here an injunction is asked which will adversely affect a public interest for whose impairment, even temporarily, an injunction bond cannot compensate, the court may in the public interest withhold relief until a final determination of the rights of the parties, though the postponement may be burdensome to the plaintiff." *Weinberger*, 456 U.S. at 312 (quoting *Yakus v. United States*, 321 U.S. 414, 440 (1944)). Here, although the Court ordered plaintiffs to post a

$1000 bond, neither that bond nor anything else can compensate the District or the public at largefor the invalidation of its duly enacted statute.  *See Church & Dwight*, 756 F.Supp.2d at 86 (irreparable harm may be shown where no "adequate compensatory or other corrective relief" will be available at a later date).  *See also, e.g., Salazar v. Buono*, 559 U.S. 700, 714 (2010) ("Where an important public interest would be prejudiced, the reasons for denying the injunction may be compelling.") (quoting *Harrisonville v. W.S. Dickey Clay Mfg. Co*., 289 U.S. 334, 338 (1933)).

A year ago, carrying firearms in public in the District was prohibited.  This Court, in *Palmer v. District of Columbia*, struck down that prohibition.  The District swiftly enacted a comprehensive regulatory scheme to comply with the Court's Order and the Second Amendment.  However, the Court's instant Order strikes down a central component of that scheme, nullifying an important public policy of the District's elected officials.  A stay pending appeal serves the public interest in allowing an orderly appellate process to proceed while these substantial issues are resolved.

## II.  THE COURT IMMEDIATELY SHOULD ISSUE AN ADMINISTRATIVE STAY

The District further requests that the Court immediately issue an administrative stay that stays its Order while the Court, and if necessary the D.C. Circuit, considers whether to grant a full stay pending appeal.  Granting an administrative stay would minimize unnecessary disruption and confusion.  If no administrative stay were issued, for instance, the District might be forced to issue licenses while its motion to stay is pending before this Court.  If this Court or the D. C. Circuit were to grant the District's motion and issue a stay, the District would have to

withdraw the licenses that had been issued.  Given that the proceedings on the District's motion to stay likely will be brief, the requested relief is warranted.

## **CONCLUSION**

For the foregoing reasons, the District respectfully requests that its Motion for Stay Pending Appeal and for An Immediate Administrative Stay be granted.

DATE: May 26, 2015   Respectfully submitted,

KARL A. RACINE
Attorney General for the District of Columbia

ELIZABETH SARAH GERE
Acting Deputy Attorney General
Public Interest Division

   /s/ Toni M. Jackson
TONI M. JACKSON, D.C. Bar No. 453765
Section Chief, Equity Section

   /s/ Andrew J. Saindon
ANDREW J. SAINDON, D.C. Bar No. 456987
Senior Assistant Attorney General
Equity Section I
441 Fourth Street, N.W., Sixth Floor South
Washington, D.C. 20001
Telephone: (202) 724-6643
Facsimile: (202) 730-1470
E-mail: andy.saindon@dc.gov