IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| BRIAN WRENN, et al., ) | Case No. 15-CV-162-FJS |
| ) | |
| Plaintiffs, ) | |
| ) | |
| v. ) | |
| ) | |
| DISTRICT OF COLUMBIA, et al., ) | |
| ) | |
| Defendants. ) | |
| _____ ) | |

MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANTS'
MOTION FOR STAY PENDING APPEAL

COME NOW the Plaintiffs, Brian Wrenn, Joshua Akery, Tyler Whidby, and the Second Amendment Foundation, Inc., by and through undersigned counsel, and submit their memorandum of points and authorities in opposition to Defendants' motion for stay pending appeal.

Dated: June 22, 2015         Respectfully submitted,

Alan Gura (D.C. Bar No. 453449)
Gura & Possessky, PLLC
105 Oronoco Street, Suite 305
Alexandria, VA 22314
703.835.9085/Fax 703.997.7665

By:  /s/ Alan Gura
    Alan Gura
    Attorney for Plaintiffs

MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANTS'
MOTION FOR STAY PENDING APPEAL

PRELIMINARY STATEMENT

Defendants have sought the same relief from the Court of Appeals, which has entered an administrative stay and ordered expedited briefing on the subject. This motion, therefore, appears to be moot. Nonetheless, as it remains pending, Plaintiffs will (briefly) brief their opposition.

ARGUMENT

Defendants have failed to establish any of the four elements required to obtain stays pending appeal, however much this Court might relax or balance these factors. The motion should be denied.

I.   THE "MANDATORY/PROHIBITIVE" TEST IS INAPPOSITE.

Plaintiffs are mindful that on their motion for preliminary injunction, this Court applied a higher "mandatory/prohibitive" distinction test of the sort not yet adopted by the D.C. Circuit. The test did not aid Defendants then, and it should not aid them now. But as they press the matter, Plaintiffs are constrained to point out that the test is inapposite on these facts. At least where a (recent) legislative enactment is at issue, from what point is the "status quo" measured by which the Court would determine whether the injunction is prohibitive or mandatory?

Defendants fail to explain why this Court must assume that the "status quo" began with the challenged provisions' enactment. Previous authorization for gun carry licenses having long fallen into desuetude, the City repealed Defendant Lanier's authority to issue handgun carry licenses in 2009. Consequently, for a brief time in the wake of this Court's earlier decision in *Palmer* v. *District of Columbia*, 59 F. Supp. 3d 173 (D.D.C. 2014), Americans were free to carry handguns throughout Washington, D.C., without proving a special reason for doing so or even bothering with a license. Many did.

The injunction did not change the "status quo"—*Defendants* did when they adopted the challenged regulations. Plaintiffs immediately sued upon Defendants' commencement of "good"/"proper" reason denials, and the District Court restored the status quo that existed prior to Defendants' new practice. In any event, the injunction here is prohibitive, not mandatory. The Court has only prevented Defendants from rejecting individuals qualified under the Defendants' regime, and barred application of the "good"/"proper" reason requirement. Defendants are free to add, remove, or amend their licensing criteria.

II.     DEFENDANTS MUST ESTABLISH ALL FOUR STAY FACTORS.

However the court might balance the four traditional stay factors, there is no question that defendants bear the burden of proving all required elements. In *Winter* v. *Natural Res. Def. Council, Inc.*, 555 U.S. 7 (2008), which held that a likelihood of success on the merits did not relieve the petitioner from proving the likelihood, rather than mere possibility, of irreparable injury. "A stay is an intrusion into the ordinary processes of administration and judicial review, and accordingly is not a matter of right, even if irreparable injury might otherwise result to the appellant." *Nken* v. *Holder*, 556 U.S. 418, 427 (2009) (quotations omitted); *id.* at 433. "When considering success on the merits and irreparable harm, courts cannot dispense with the required showing of one simply because there is a strong likelihood of the other." *Id.* at 438 (Kennedy, J., concurring). Accordingly,

> [i]n this circuit, it remains an open question whether the "likelihood of success" factor is an "independent, free-standing requirement," or whether, in cases where the three other factors strongly favor issuing an injunction, a plaintiff need only raise a "serious legal question" on the merits.

*Aamer* v. *Obama*, 742 F.3d 1023, 1043 (D.C. Cir. 2014) (quotation omitted). The question should not remain open—all four factors must be proven. *Gordon* v. *Holder*, 721 F.3d 638, 659 (D.C. Cir.


2013) (Kavanaugh, J., concurring); *Davis* v. *Pension Benefit Guar. Corp.*, 571 F.3d 1288, 1295-96 (D.C. Cir. 2009) (Kavanaugh, J., concurring); *Eley* v. *District of Columbia*, 47 F. Supp. 3d 1, 20-21 (D.D.C. 2014); *Guttenberg* v. *Emery*, 26 F. Supp. 3d 88, 100 (D.D.C. 2014).

Defendants do not remotely establish any of the four required factors.

III.   DEFENDANTS HAVE NO LIKELIHOOD OF SUCCESS ON THE MERITS.

In asserting "a substantial indication of probable success," *Wash. Metro. Area Transit Comm'n* v. *Holiday Tours, Inc.*, 559 F.2d 841, 843 (D.C. Cir. 1977) (quoting *Virginia Petroleum Jobbers Ass'n* v. *FPC*, 259 F.2d 921, 925 (D.C. Cir. 1958)),"[i]t is not enough that the chance of success on the merits be 'better than negligible.' . . . [m]ore than a mere 'possibility' of relief is required." *Nken*, 556 U.S. at 434 (quotations omitted). Defendants' success is far from a substantial probability.

To begin, Defendants persist in arguing that this Court erred in determining that there is a right to carry handguns for self-defense. The briefing on this point has been exhausted, on the merits and on reconsideration in *Palmer*, and again, here. There is no point in revisiting this ground, other than to point out that if Defendants wanted to challenge this Court's determination as to the content of the right to bear arms, they should not have dismissed their appeal in *Palmer*. Their arguments that the Supreme Court has not found the Second Amendment to extend beyond the home, and that only the Seventh Circuit has done so, are simply frivolous.

Nor is there anything wrong with this Court's reliance on *Peruta* v. *Cnty. of San Diego*, 742 F.3d 1144 (9th Cir. 2014), *reh'g en banc granted*, 781 F.3d 1106 (9th Cir. 2015). While the reheard panel opinion in *Peruta* may not currently be the Ninth Circuit's law, it represents the considered judgment of two federal appellate judges bound and subject to persuasion by the same

precedent that operates here, where the question was open to the Court. And again, *Palmer*, too, followed *Peruta*, and Defendants chose not to fight that decision.

As *Peruta* recounted, it is error to persist in the argument, as Defendants do here again, that courts must afford "deference" to determinations of "fit" under intermediate scrutiny. Did *Peruta* misquote *Turner Broadcasting System, Inc.* v. *FCC*, 520 U.S. 180 (1997) ("*Turner II*")? No, it did not. And neither *Turner II*, nor *Heller* v. *District of Columbia*, 670 F.3d 1244 (D.C. Cir. 2011) ("*Heller II*"), stand for the proposition that "intermediate scrutiny" is fancy legalese for "rubber stamp." *Heller II*'s formulation of intermediate scrutiny makes crystal clear that the test requires *actual scrutiny*:

> [T]he District must establish a tight 'fit' between the registration requirements and an important or substantial governmental interest, a fit that employs not necessarily the least restrictive means but . . . a means narrowly tailored to achieve the desired objective . . . the means chosen [may] not [be] substantially broader than necessary to achieve that interest.

*Heller II*, 670 F.3d at 1258 (quotations omitted).

It could not be otherwise. The City Council may have the legislative function of identifying social problems and solutions that would address them. But the question of whether a legislative enactment, noble though it may be, is narrowly-tailored such that it properly "fits" a constitutional right, is a purely judicial function. This Court, not the City Council, determines whether legislation respects constitutional rights.

Because barring the community at large from exercising a fundamental right cannot be a narrowly-tailored way of addressing misuse of that right, Defendants should not have any hope of prevailing. Whether the District's law makes for good or bad policy is irrelevant. Even were Plaintiffs to stipulate that carrying handguns for self-defense is net negative for society, so what? It is also, like many controversial policies, enshrined in the Constitution. The city made the exact same

4

arguments about the right to keep handguns at home. May the city limit handgun possession only to those with an exceptional need for home self-defense, demanding proof that applicants suffer a specific threat of burglary?

It may well be that rationing Second Amendment rights will make society safer. That may also hold true for First Amendment or Fourth Amendment rights. Many economists dispute the Sixteenth Amendment's wisdom. But this Court does not sit to "prove" that a constitutional provision is or is not desirable.

IV.    DEFENDANTS WILL NOT SUFFER IRREPARABLE HARM.

Nobody likes to be enjoined. But Defendants' claim that they are irreparably harmed per se whenever any of their laws are enjoined, and to a degree warranting an automatic stay, overstates matters. As Justice Thomas's dissent cited by Defendants makes clear, the Supreme Court has abandoned any reflexive inclination to grant stays whenever the Government is enjoined. *Strange* v. *Searcy*, 135 S. Ct. 940, 941 (2015) (Thomas, J., dissenting); see also *Maricopa County* v. *Lopez-Valenzuela*, 135 S. Ct. 428 (2014) (Thomas, J., respecting denial of application for stay). Nor would such a bias be appropriate.

Defendants' lackadaisical reaction to the injunction belies their claims of imminent harm. They waited over a week to seek a stay from this Court. Having been rebuffed, they waited another four days to repeat the request, and then waited over another week from this Court's second denial to notice their appeal. This is simply not the conduct of a city imperiled by a preliminary injunction. But it is consistent with Defendant Lanier's candid reaction to the *Palmer* decision: "Law-abiding citizens that register firearms, that follow the rules, are not our worry."[1]

---

[1] Mike DeBonis, "Security, not street crime, at risk after gun ruling, D.C. Police Chief Cathy Lanier says," *Washington Post*, July 30, 2014, available at http://www.washingtonpost. com/

As noted in some detail previously, the data backs up at least that statement. Individuals licensed to carry guns under meaningful regulatory regimes have a negligible crime rate. Moreover, as the FBI crime reports definitively establish, jurisdictions that respect the right to bear arms experience dramatically less crime than do jurisdictions where the right is violated—with the District of Columbia's crime rate at staggering levels. Correlation may not be causation, but the correlation claimed by Defendants simply does not exist.

V.     THE BALANCE OF THE EQUITIES FAVORS PLAINTIFFS.

There is something ironic about Defendants claiming that individuals denied the right to bear arms are not thereby injured, because their fear of criminal violence is speculative, while at once asserting that the City will suffer imminent and severe criminal violence and mayhem if law-abiding, licensed individuals are armed. Both arguments are unfounded.

Whether the Second Amendment secures the right to shoot others in self-defense is an interesting, but irrelevant question. Every American legal system recognizes a right to use handguns in self-defense outside the home—including the District's. *Gillis* v. *United States*, 400 A.2d 311, 313 (D.C.1979). At issue here is the right to "wear, bear, or carry [arms] upon the person or in the clothing or in a pocket, for the purpose . . . of being armed and ready for offensive or defensive action in a case of conflict with another person." *District of Columbia* v. *Heller*, 554 U.S. 570, 584 (2008) (quotation omitted); *id.* at 592 (right to "*carry*" weapons in case of confrontation"). Defendants barred Plaintiffs from carrying arms for the purpose of defensive action in case of confrontation, inflicting a constitutional injury. Cf. *Dearth* v. *Holder*, 641 F.3d 499 (D.C. Cir.

---

local/dc-politics/security-not-street-crime-at-risk-after-gun-ruling-dc-police-chief-cathy-lanier-says/2014/07/30/f8b17e1c-1808-11e4-9e3b-7f2f110c6265story.html (last visited June 12, 2015).

2011). "Infringements of this right cannot be compensated by damages." *Ezell* v. *City of Chicago*, 651 F.3d 684, 699 (7th Cir. 2011).

This very real injury outweighs the District's speculative and wholly unfounded claims.

VI.   THE PUBLIC INTEREST COUNSELS AGAINST A STAY.

It remains "obvious" that "enforcement of an unconstitutional law is always contrary to the public interest." *Gordon*, 721 F.3d at 653 (citations omitted). Indeed, "[i]t may be assumed that the Constitution is the ultimate expression of the public interest." *Id.* (quotation omitted).

CONCLUSION

Defendants' motion for a stay pending appeal should be denied.

Dated: June 22, 2015							Respectfully submitted,

										Alan Gura (D.C. Bar No. 453449)
										Gura & Possessky, PLLC
										105 Oronoco Street, Suite 305
										Alexandria, VA 22314
										703.835.9085/Fax 703.997.7665

							By:	/s/ Alan Gura
								Alan Gura
								Attorney for Plaintiffs