UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

_____
                                          )
BRIAN WRENN, *et al.*,                    )
                                          )
                    Plaintiffs,           )
                                          )
        v.                                )        Civil Action No. 15- 00162 (FJS)
                                          )
DISTRICT OF COLUMBIA, *et al.*,           )
                                          )
                    Defendants.           )
_____)

## DEFENDANTS' REPLY IN SUPPORT OF A STAY PENDING APPEAL

Plaintiffs oppose a stay pending appeal, but fail to counter the showing made by the District in favor of such a stay. Thus, the Court should stay, pending appeal, its preliminary injunction barring the District from enforcing its "good reason" standard against any named plaintiff or member of the Second Amendment Foundation.

For more than a century, the District has limited the right to carry a handgun in public to individuals who can demonstrate a particularized need for self-protection. *See* Committee on the Judiciary and Public Safety, D.C. Council, Report on Bill 20-930, at 2-3 (Nov. 26, 2014) ("Comm. Rep.").[1] For much of that time, the District banned the possession of handguns altogether. D.C. Code §§ 7-2501.01(12), 7-2502.01(a), 7-2502.02(a)(4) (2001). When the Supreme Court found this ban unconstitutional in *District of Columbia v. Heller*, 554 U.S. 570 (2008) ("*Heller I*"), the District amended its laws to allow carrying within the home, which *Heller I* found to be the core right enshrined in the Second Amendment. D.C. Code § 7-2502.02(a)(4); *Heller I*, 554 U.S. at 628–29.

_____

[1]        *Available    at*    http://lims.dccouncil.us/Download/32576/B20-0930-Committee
Report1.pdf.

After this Court found the District's new regime deficient, *Palmer v. District of Columbia*, 59 F. Supp. 3d 173 (D.D.C. 2014), the District amended its laws again to allow the public carrying of weapons, and in doing so revived its longstanding "good reason" provision, thereby ensuring that the public-safety risks associated with public carrying were incurred only when an individual could demonstrate a need distinguishable from that of the general public. D.C. Act 20-621 § 3(b) (Feb. 6, 2015).

A stay will allow the District to uniformly enforce this longstanding provision, which the Council has found necessary to reduce crime and promote public safety, while the appeal proceeds.

## Argument

### I.     The District Is Likely To Succeed On The Merits Of Its Appeal.

Preliminarily, even if the District had not made a strong showing on all four factors, plaintiffs do not dispute that this lawsuit will decide serious constitutional issues of first impression, a factor which weighs heavily in favor of a stay. *See Klayman v. Obama*, 957 F.Supp.2d 1, 43 (D.D.C. 2013) (*sua sponte* staying order pending appeal, in light of "the novelty of the constitutional issues"); *Baker v. Socialist People's Libyan Arab Jamahirya*, 810 F.Supp.2d 90, 97 (D.D.C. 2012) (Likelihood of success on the merits factor "does not require a showing of success with absolute certainty. 'It will ordinarily be enough that the plaintiff has raised serious legal questions going to the merits, so serious, substantial, and difficult as to make them a fair ground of litigation and thus for more deliberative investigation.'") (quoting *Population Inst. v. McPherson*, 797 F.2d 1062, 1078 (D.C. Cir. 1986)).

Intermediate scrutiny requires "a tight 'fit' between the [challenged law] and an important or substantial governmental interest." *Heller v. District of Columbia*, 670 F.3d 1244,

1258 (D.C. Cir. 2011) ("*Heller II*"). Plaintiffs never actually explain how that scrutiny works, but binding precedent requires this Court to defer to the Council's predictive judgment as to "whether there was a 'real harm' amounting to an important government interest and 'whether [the statutory provisions at issue] will alleviate it in a material way.'" *Turner Broad. Sys. v. FCC*, 520 U.S. 180, 195 (1997) ("*Turner II*"); *Heller II*, 670 F.3d at 1259 (same).

The Court, however, refused to defer to the Council's judgment that the "good reason" standard would promote public safety. Doc. No. 13 at 16–17. Instead, the Court disregarded empirical studies relied on by the Council (which associate right-to-carry regimes with substantially higher rates of aggravated assault, rape, robbery and murder), and substituted its *own* predictive judgment, finding "[no] relationship between reducing the risk to other members of the public and/or violent crime and the ["good reason" standard]." *Id*. at 17. This "erroneous premise as to the pertinent law," in itself, strongly indicates that the District will prevail. *Ambach v. Bell*, 686 F.2d 974, 979 (D.C. Cir. 1982).

Plaintiffs do not defend this finding, and never actually address whether the "good reason" standard is narrowly tailored because they presume that their right to publicly carry a handgun is so "enshrined in the Constitution" that the District's reasons for limiting it are "irrelevant." Opp. at 4. This is wrong as a matter of law. *Turner II*, 520 U.S. at 196 ("Even in the realm of First Amendment questions where Congress must base its conclusions upon substantial evidence, deference must be accorded to its findings as to the harm to be avoided and to the remedial measures adopted for that end[.]"). The District has offered considerable evidence that its "good reason" standard does not even implicate the Second Amendment. Doc. No. 9 at 13–15; *accord Drake v. Filko*, 724 F.3d 426, 431–32 (3d Cir. 2013) ("good reason" requirement long-standing).

And even if the "good reason" provision does implicate the Second Amendment, it is likely to survive intermediate scrutiny. The Second, Third, and Fourth Circuits have all upheld virtually identical provisions, holding that the right to publicly carry a handgun is not a "core" Second Amendment right. *See Kachalsky v. Cnty. of Westchester*, 701 F.3d 81, 93 (2d Cir. 2012); *Drake*, 724 F.3d at 436; *Woollard v. Gallagher*, 712 F.3d 865, 876 (4th Cir. 2013). Plaintiffs ignore these three opinions entirely, preferring instead to defend the Court's erroneous reliance on *Peruta*. To be sure, it is possible that the D.C. Circuit will be swayed by the vacated panel decision in *Peruta v. County of San Diego*, 742 F.3d 1144 (9th Cir. 2014), *vacated*, 781 F.3d 1106 (9th Cir. 2015), but for purposes of measuring likelihood of success on appeal, the appropriate consideration should be the uniform body of appellate precedents squarely holding that "good reason" regimes are constitutional.

## II.     The Balance Of The Equities Favors A Stay To Preserve The Status Quo.

### A.     Absent a stay, the District and the public face irreparable harm.

The District offered two bases for its right to a stay pending appeal. *First*, as the Chief Justice of the Supreme Court has noted, "any time a State is enjoined by a court from effectuating statutes enacted by representatives of its people, it suffers a form of irreparable injury." *Maryland v. King*, 133 S. Ct. 1, 3 (2012) (Roberts, C.J., in chambers). The plaintiffs argue against "any reflexive inclination to grant stays whenever the Government is enjoined." Opp. at 5. But a presumption of irreparable harm is fully warranted here, where the preliminary injunction is based on a novel constitutional challenge to a key provision in a public safety law.

Plaintiffs argue that the District changed the *status quo* when it enacted the current law, Opp. at 2, and insist that the "mandatory/prohibitive" test is inapposite here. *Id*. at 1. Plaintiffs are wrong on both counts. Longstanding precedent leaves no doubt that the *status quo* is "the last

uncontested status which preceded the pending controversy" *i.e.*, "prior to the start of [the] litigation[.]" *Consarc Corp. v. United States Treasury Dep't, Off. of Foreign Assets Control*, 71 F.3d 909, 912–13 (D.C. Cir. 1995) (citations omitted). Thus, the *status quo ante* here was after the District had enacted the existing regime, before plaintiffs filed suit. The Court's injunction therefore clearly altered the *status quo*. The Court should grant a stay here to preserve the *status quo* while the District appeals. *Cf., e.g., Abdullah v. Bush*, 945 F.Supp.2d 64, 67 (D.D.C. 2013) ("A preliminary injunction that would change the status quo is an even more extraordinary remedy.") (citing *Sierra Club v. Johnson*, 374 F.Supp.2d 30, 33 (D.D.C. 2005) (mandatory injunction changing *status quo* "is an extraordinary remedy, especially when directed at the United States Government").

*Second*, a stay will preserve the public safety objectives that prompted the Council to enact the "good reason" standard in the first instance. As explained, the Council's predictive judgments deserve deference. *Heller II*, 670 F.3d at 1258–59; *Turner II*, 520 U.S. at 195. *See also Schrader v. Holder*, 704 F.3d 980, 990 (D.C. Cir. 2013) ("In the context of firearm regulation, the legislature is 'far better equipped than the judiciary' to make sensitive public policy judgments (within constitutional limits) concerning the dangers in carrying firearms and the manner to combat those risks.") (quoting *Kachalsky*, 701 F.3d at 97 (quoting *Turner Broadcasting System, Inc. v. FCC*, 512 U.S. 622, 665 (1994))). *See also City of Los Angeles v. Alameda Books, Inc.*, 535 U.S. 425, 440 (2002) (The "City Council is in a better position than the Judiciary to gather and evaluate data on local problems.") (citations omitted).

And the Council explicitly found, based on empirical studies, expert testimony, and the reasoned analysis of other state laws enacting—and court decisions upholding—similar licensing regimes, that an increase in the number of handguns carried in public increases the risk of violent

crime and the burden on the District's police force. Comm. Rep. at 4–7, 17–19. The plaintiffs disagree with the Council's findings, Opp. at 4, but they have cited no authority suggesting that *their* predictive judgment is entitled to deference.

Plaintiffs insist that "FBI crime reports definitively establish [that] jurisdictions that respect the right to bear arms experience dramatically less crime than do jurisdictions where the right is violated[.]" Opp. at 6. It seems obvious—to the District, anyway—that the statistics on this issue do not "definitively establish" anything, but the District looks forward to challenging plaintiffs' conclusions at the appropriate time. *Cf.* Christopher Ingraham, "Guns in America: For every criminal killed in self-defense, 34 innocent people die," WASH. POST, June 19, 2015 (*available online at* http://www.washingtonpost.com/blogs/wonkblog/wp/2015/06/19/guns-in-america-for-every-criminal-killed-in-self-defense-34-innocent-people-die/) (discussing Violence Policy Center, *Firearm Justifiable Homicides and Non-Fatal Self-Defense Gun Use: An Analysis of Federal Bureau of Investigation and National Crime Victimization Survey Data* (June 2015) (*available online at* http://www.vpc.org/studies/justifiable15.pdf).

### B. Plaintiffs cannot demonstrate irreparable harm if a stay is issued.

Plaintiffs cannot demonstrate any particularized reason to fear "actual and not theoretical" injury if the status quo is maintained while this appeal is pending. *Wisconsin Gas v. FERC*, 758 F.2d 669, 674 (D.C. Cir. 1985). Indeed, their standing to challenge the "good reason" standard rests on their inability to satisfy it. *See* Doc. Nos. 6-3, 6-4, 6-5 (affidavits of named plaintiffs). They rely instead on their claim that they will automatically suffer irreparable harm via a "constitutional injury." Opp. at 6. But, as the District has noted repeatedly, such a right has

not yet been recognized by the Supreme Court or the D.C. Circuit, and it is doubtful this litigation will change that.

Moreover, the right to keep and bear arms has no intrinsic value; unlike the rights enshrined in the First Amendment, it is not an end in itself, the deprivation of which automatically establishes irreparable harm. Rather, it is "the inherent right of self-defense" that is "central to the Second Amendment." *Heller I*, 554 U.S. at 628. If no occasion arises where a handgun is needed for self-defense, its absence cannot cause harm.

### Conclusion

For the foregoing reasons and those set forth in the District's Motion for a Stay, the Court should grant the District's Motion and enter a stay.

DATE: June 26, 2015                    Respectfully submitted,

KARL A. RACINE
Attorney General for the District of Columbia

ELIZABETH SARAH GERE
Acting Deputy Attorney General
Public Interest Division

      /s/ Toni Michelle Jackson
TONI MICHELLE JACKSON
Chief, Equity Section
Bar Number 453765
Office of the Attorney General
One Judiciary Square
Sixth Floor South
441 Fourth Street, N.W.
Washington, D.C. 20001
(202) 442-9784
E-mail: toni.jackson@dc.gov

/s/ Andrew J. Saindon
ANDREW J. SAINDON, D.C. Bar No. 456987
Senior Assistant Attorney General
Equity Section
441 Fourth Street, N.W., Sixth Floor South
Washington, D.C. 20001
Telephone: (202) 724-6643
Facsimile: (202) 730-1470
E-mail: andy.saindon@dc.gov

/s/ Chad A. Naso
Chad A. Naso [1001694]
Assistant Attorney General
Office of the Attorney General, DC
441 Fourth Street, NW
Sixth Floor South
Washington, DC 20001
(202) 724-7854 (o)
(202) 741-8951 (f)
chad.naso@dc.gov