SCHEDULED FOR ORAL ARGUMENT ON NOVEMBER 20, 2015

——————————

No. 15-7057

——————————

IN THE UNITED STATES COURT OF APPEALS
FOR THE DISTRICT OF COLUMBIA CIRCUIT

——————————

BRIAN WRENN, *et al.*,
APPELLEES,

v.

DISTRICT OF COLUMBIA, *et al.*,
APPELLANTS.

——————————

ON APPEAL FROM AN ORDER OF THE
UNITED STATES DISTRICT COURT FOR THE DISTRICT OF COLUMBIA

——————————

**SUPPLEMENTAL BRIEF OF THE DISTRICT OF COLUMBIA AND
METROPOLITAN POLICE DEPARTMENT CHIEF CATHY LANIER**

——————————

KARL A. RACINE
Attorney General for the District of Columbia

TODD S. KIM
Solicitor General

LOREN L. ALIKHAN
Deputy Solicitor General

HOLLY M. JOHNSON
Assistant Attorney General
Office of the Solicitor General

Office of the Attorney General
441 4th Street, NW, Suite 600S
Washington, D.C. 20001
(202) 442-9890
holly.johnson@dc.gov

## CERTIFICATE AS TO PARTIES, RULINGS, AND RELATED CASES

A. *Parties and amici*.—The District of Columbia and Metropolitan Police Department Chief Cathy Lanier are appellants here and defendants below.  Brian Wrenn, Joshua Akery, Tyler Whidby, and the Second Amendment Foundation, Inc., are appellees here and plaintiffs below.  *Amici curiae* for appellants are the Brady Center to Prevent Gun Violence, the Law Center to Prevent Gun Violence, the Violence Policy Center, Everytown for Gun Safety, the D.C. Appleseed Center for Law & Justice, D.C. Democracy, D.C. Vote, the League of Women Voters of D.C., former Mayor Anthony Williams, and the states of Maryland, California, Connecticut, Illinois, Massachusetts, and New York.  The National Rifle Association of America and a group including the California Rifle and Pistol Association Foundation and Professors Joyce Lee Malcolm, David Kopel, and Robert Cottrol will participate as *amici curiae* for appellees.

B. *Rulings under review*.—The District and Chief Lanier appeal an order issued on May 18, 2015 by District Court Judge Frederick J. Scullin, Jr., granting plaintiffs' motion for a preliminary injunction (ECF Record Document 13).

C. *Related cases*.—In July 2014, in *Palmer v. District of Columbia*, 59 F. Supp. 3d 173 (D.D.C. 2014), the district court (Scullin, J.) struck down the District's prohibition on the public carrying of handguns.  An appeal was filed (No. 14-7180) but was voluntarily dismissed in light of amendments to the District's

gun laws.   Plaintiffs filed this action as a "related case" in the district court, presumably because at that time a post-judgment motion was pending in *Palmer* that challenged the constitutionality of the amended law challenged here.   That motion was denied on May 18, 2015.

# TABLE OF CONTENTS

INTRODUCTION ...................................................................1

BACKGROUND ....................................................................1

SUMMARY OF ARGUMENT ...................................................2

ARGUMENT .........................................................................3

    I.    Judge Scullin Was Not Designated To Preside Over This Lawsuit; Accordingly, He Lacked Authority To Enter The Injunction And It Must Be Vacated .......................................3

        A.    Judge Scullin was not designated to hear this case .......................3

        B.    *Frad* and its progeny direct that Judge Scullin's order is void .....................................................................5

        C.    The "de facto officer" doctrine does not excuse the jurisdictional defect here .............................................9

CONCLUSION .....................................................................17

# TABLE OF AUTHORITIES*

### *Cases*

*Al Bahlul v. United States*, 792 F.3d 1 (D.C. Cir. 2015) .........................................15

*\*Am. Constr. v. Jacksonville, T. & K.W. Ry.*, 148 U.S. 372 (1893) ...................7, 11

*Andrade v. Lauer*, 729 F.2d 1475 (D.C. Cir. 1984).................................................14

*Annoni v. Blas Nadal's Heirs*, 94 F.2d 513 (1st Cir. 1938).............................. 12, 13

*Arcadia v. Ohio Power*, 498 U.S. 73 (1990)............................................................16

*Ball v. United States*, 140 U.S. 118 (1891)....................................................... 10, 11

*Cramp & Sons v. Int'l Curtis Marine Turbine*, 228 U.S. 645 (1913).....................11

*District of Columbia v. Air Fla.*, 750 F.2d 1077 (D.C. Cir. 1984) .........................15

*Ex Parte Ward*, 173 U.S. 452 (1899)......................................................................11

*Rodriguez de Quijas v. Shearson/Am. Express*, 490 U.S. 477 (1989)....................10

*\*Frad v. Kelly*, 302 U.S. 312 (1937) ...................................................... 3, 5, 6, 7, 14

*Glidden Co. v. Zdanok*, 370 U.S. 530 (1962) ............................................. 10, 11, 16

*In re Motor Fuel Temperature Sales Practices Litig.*,
711 F.3d 1050 (9th Cir. 2013) ................................................................................13

*Lesesne v. Doe*, 712 F.3d 584 (D.C. Cir. 2013).....................................................15

*McDowell v. United States*, 159 U.S. 596 (1895)................................................3, 11

*Moody v. Albemarle Paper*, 417 U.S. 622 (1974) ....................................................8

---

\*       Authorities upon which we chiefly rely are marked with asterisks.

*Nguyen v. United States*, 539 U.S. 69 (2003) .......................................... 10, 11, 12

*Norton v. Shelby Cnty.*, 118 U.S. 425 (1886) ........................................................12

*Ohio Nat'l Life Ins. v. United States*, 922 F.2d 320 (6th Cir. 1990).......................15

*Palmer v. District of Columbia*, 59 F. Supp. 3d 173 (D.D.C. 2014) ........................1

*Roell v. Withrow*, 538 U.S. 580 (2003)...................................................................10

*Roosevelt v. DuPont*, 958 F.2d 416 (D.C. Cir. 1992) ....................................... 14, 15

*Ryder v. United States*, 515 U.S. 177 (1995)......................................................9, 13

*Silver v. USPS*, 951 F.2d 1033 (9th Cir. 1991) ........................................................9

*Steckel v. Lurie*, 185 F.2d 921 (6th Cir. 1950)........................................................9

*SW Gen. v. NLRB*, 796 F.3d 67 (D.C. Cir. 2015) ................................................9, 14

*United States v. Am.-Foreign S.S.*, 363 U.S. 685 (1960)........................... 6, 7, 8, 9

*United States v. Armstrong*, 517 U.S. 456 (1996) ..................................................15

*Uzzell v. Friday*, 625 F.2d 1117 (4th Cir. 1980)......................................................7

### Statutes and Legislative Materials

28 U.S.C. § 133(a) ...................................................................................... 3, 8, 12

28 U.S.C. § 134(b) ....................................................................................................8

28 U.S.C. § 292(d) ....................................................................................................8

28 U.S.C. § 294(c) ....................................................................................................4

28 U.S.C. § 294(d) .......................................................................................... 4, 8, 12, 13

28 U.S.C. § 294(e) ............................................................................................ 4, 8, 9

28 U.S.C. § 296 ...................................................................................................5

2 Stat. 97, § 23 (1801) ......................................................................................13

34 Stat. 1417, ch. 2940 (1907) .........................................................................13

36 Stat. 1087, § 13 (1911) ................................................................................13

42 Stat. 839, ch. 306 § 3 (1922) .......................................................................13

62 Stat. 901, ch. 646 (1948) .............................................................................13

62 D.C. Reg. 1,944 .............................................................................................1

D.C. Law 20-279 .................................................................................................1

## INTRODUCTION

This Court ordered supplemental briefing on (1) whether Senior District Judge Frederick J. Scullin, Jr., of the Northern District of New York was authorized by the notice of designation and assignment of July 1, 2011, or any other notice of designation and assignment, to enter any order in this case; and (2) whether, if Judge Scullin was not so authorized, he lacked jurisdiction to adjudicate the case.

## BACKGROUND

In 2009, four individuals and the Second Amendment Foundation brought suit against the District of Columbia, claiming that its ban on carrying handguns in public violated their Second Amendment rights. *Palmer v. District of Columbia*, No. 09-cv-1482, ECF Record Document ("RD") 1. The case was assigned to Judge Henry H. Kennedy, Jr. *Palmer* RD 1. On July 1, 2011, the Chief Justice of the United States designated Judge Scullin to preside over ten specific district court cases, including *Palmer*, and the case was reassigned to him. *Palmer* RD 20, 22.

Judge Scullin entered judgment in July 2014, striking down the public-carrying ban. 59 F. Supp. 3d 173 (D.D.C. 2014). In response, the Council for the District of Columbia passed emergency and permanent legislation requiring a license to carry a handgun in public and setting standards for licensure. Bill 20-926; D.C. Law 20-279, 62 D.C. Reg. 1,944.

The *Palmer* plaintiffs then moved Judge Scullin to expand that case and overturn the new law, arguing that one of its standards—requiring "good reason" to carry—violated the *Palmer* injunction.  *Palmer* RD 71, 83.  The District opposed, explaining that the plaintiffs could challenge the new law only by filing a new lawsuit.  *Palmer* RD 73 at 10; 85 at 10.

On February 3, 2015, three new plaintiffs and the Second Amendment Foundation brought this action, challenging the constitutionality of the "good reason" standard in the District's new law.  Joint Appendix 7-20.  Their attorney, who also represented the *Palmer* plaintiffs, designated this as a "related case," stating that both cases "involve[] common issues of fact" and "grow[] out of the same event or transaction."  Addendum ("A.") 3.  As a result, a district court clerk assigned the case to Judge Scullin.  RD Entry 2/3/15.  The District assumed that Judge Scullin had been properly designated to hear the case.

In June, Judge Scullin entered a preliminary injunction barring the District from enforcing its "good reason" standard.  RD 13.  The same day, he denied the *Palmer* plaintiffs' post-judgment motions.  *Palmer* RD 92.

## SUMMARY OF ARGUMENT

Judge Scullin was not designated to preside over this lawsuit.  A judge may sit by designation in another circuit only if that circuit's Chief Judge certifies that a

visiting judge is necessary and the Chief Justice of the United States then designates the visiting judge to serve.  Neither did so here.

Without a designation, Judge Scullin lacked authority to preside over the case.  *Frad v. Kelly*, 302 U.S. 312 (1937).  In *Frad*, the Supreme Court vacated an order issued by a judge whose designated service in a neighboring jurisdiction had ended, finding it "null"—despite the parties' stipulation to his authority—because he had no jurisdiction to issue orders outside of his home jurisdiction in the absence of an active designation.  *Id.* at 316.  *Frad* is binding here and requires vacatur of the injunction and remand of the case to a new, properly authorized judge to consider plaintiffs' request for an injunction.  Because *Frad* controls, the de facto officer doctrine does not apply.

## ARGUMENT

### I.   Judge Scullin Was Not Designated To Preside Over This Lawsuit; Accordingly, He Lacked Authority To Enter The Injunction And It Must Be Vacated.

#### A.   Judge Scullin was not designated to hear this case.

The jurisdiction of the district courts "is subject absolutely to the control of congress."  *McDowell v. United States*, 159 U.S. 596, 598-99 (1895).  District judges are appointed to serve in a particular district.  28 U.S.C. § 133(a).  However, "[t]he Chief Justice of the United States may designate and assign temporarily a district judge of one circuit for service in another … upon

presentation of a certificate of necessity by the chief judge … of the circuit wherein the need arises."  28 U.S.C. § 292(d).

A judge who takes "senior" status can perform judicial duties in his home circuit if he is so "designated and assigned by [his circuit's] chief judge," or in a different circuit if he is so "designated and assigned by the Chief Justice."  28 U.S.C. § 294(c)-(d).  Importantly, "[n]o retired … judge … shall perform judicial duties except when designated and assigned."  28 U.S.C. § 294(e).

As a senior judge from a different circuit, Judge Scullin was not authorized to hear this case.  Before he could exercise any authority: (1) the Chief Judge of this Court had to "certif[y]" a need for a visiting judge; and (2) the Chief Justice of the United States had to "designate[] and assign[]" him duties that encompassed this case.  28 U.S.C. § 294(d).  Neither condition was met.  On June 23, 2011, then-Chief Judge Sentelle issued a "certificate of necessity," stating that "a need exists for the designation and assignment" of Judge Scullin to preside over ten "[s]pecific cases," each identified by docket number, one of which was *Palmer*.  A. 1.  The Chief Justice then designated Judge Scullin to preside over those ten cases. A. 2.  This case was not listed—indeed, the designation took place three years before the District even enacted the law challenged here.

The District Court Clerk recently explained to District counsel that this case was assigned to Judge Scullin without a designation because plaintiffs claimed it

was "related" to *Palmer* under Local Rule 40.5.  *See* A. 3.  That was improper.

Even assuming it was "related," a visiting judge's designation does not extend to

related cases.  He can "decide or join in the decision and final disposition of all

matters submitted" during his designated assignments, including "applications for

rehearing or further proceedings in such matters."  28 U.S.C. § 296.  But any order

issued outside of those "incidental and supplementary duties" is null and void.

*Frad*, 302 U.S. at 316.

### B.     *Frad* and its progeny direct that Judge Scullin's order is void.

In *Frad*, Judge Inch of the Eastern District of New York was designated to

sit for a specified time in the Southern District; while there, he ordered a criminal

defendant to probation with a suspended sentence.  *Id.* at 313.  After Judge Inch's

designation expired, the defendant moved him to revoke the probation and dismiss

the suspended proceedings.  *Id.*  Judge Inch treated the motion as a continuation of

his expired designation: he heard testimony from the Southern District probation

officer, placed a "Southern District" caption on the order granting the motion, and

filed the order with the Southern District clerk.  *Id.*  The Supreme Court found the

order "null" because the Southern District retained jurisdiction over the suspended

proceedings and Judge Inch had no authority there.  *Id.* at 316.  It explained that

while Section 296 allows a visiting judge to "perform the functions which are

incidental and supplementary to the duties performed by him while present and

5

acting in the designated district," the statute "clearly does not contemplate that he shall decide any matter which has not been submitted to him within the designated district." *Id.* at 316-17. The Court found Judge Inch's order "null" despite the government's express stipulation to his authority: "Neither [the probation officer nor the prosecutor] could confer jurisdiction upon a designated judge to perform acts not authorized by the assignment Act outside the district of designation after his term of service had ended." *Id.* at 319.

The preliminary injunction issued by Judge Scullin is likewise null. As in *Frad*, Judge Scullin's duties were enumerated in his designation and did not extend beyond the specific cases he was assigned to hear. And, as in *Frad*, he issued an order outside of those enumerated duties. Indeed, Judge Scullin acted even further outside of his authority because he took control over an entirely *new* suit—one in which different named plaintiffs challenged a different law. And the District did not stipulate to Judge Scullin's authority as the prosecutor did in *Frad*. The District did not even know that he was not designated to hear the case.

The Court reached a similar conclusion in *United States v. American-Foreign Steamship*, 363 U.S. 685 (1960), vacating a decision that violated a statute barring retired judges from sitting *en banc*, even though the appellant did not challenge the judge's authority until after the decision issued. *Id.* at 687-88, 691. Although the Court acknowledged "[p]ersuasive arguments" for allowing a retired

6

judge to sit *en banc* if he participated in the panel decision, it held that the judgment "must be set aside" because the retired judge was "without power to participate." *Id.* at 690-91.  The Court cited *Frad*, which, as discussed, holds that the statutory limitations for visiting judges are jurisdictional.[1]  *Id.*  It also cited *American Construction v. Jacksonville*, *T. & K.W. Railway*, 148 U.S. 372 (1893), which held that, "[i]f the statute made [a judge] incompetent to sit at the hearing, the decree in which he took part was unlawful, and perhaps absolutely void, and should certainly be set aside or quashed by any court having authority to review it by appeal." *Id.* at 387.  Twenty years later, the Fourth Circuit *sua sponte* vacated a decision based on the same error, explaining that "it is manifest from … *American-Foreign* … that the requirement of non-participation by a senior judge in a rehearing in banc is jurisdictional."  *Uzzell v. Friday*, 625 F.2d 1117, 1120-21 (4th Cir. 1980).

*American-Foreign* found Congress's decision to limit *en banc* participation to active judges to be jurisdictional, even though Congress could reasonably have

---

[1]     In dissent, Justice Harlan suggested that *Frad* was limited to the probation statute at issue in that case.  363 U.S. at 696 n.5.  But the policy underlying the Court's grant of certiorari does not limit the scope of *Frad*'s holding: that any order issued outside of a visiting judge's designated authority is "null."  302 U.S. at 316.

excepted judges who participated in the panel decision.[2]  Here, Congress has made clear that judges may perform judicial functions outside of their home districts only to the extent they are so designated by the Chief Justice of the United States. And for good reason.  The President, with the consent of the Senate, decides which judge will be appointed to a particular district, where he will have automatic authority to preside.  *See* 28 U.S.C. § 133(a).  Congress has emphasized the importance of this localism by requiring most judges to live in their districts, which creates a personal connection between the judge and the community he serves.  *See* 28 U.S.C. § 134(b).  And while Congress allows judges to serve in other jurisdictions in times of need, it delegates the authority to determine when there is a need, and who will serve, to the highest ranking officials in the judiciary—the Chief Judge of the borrowing circuit and the Chief Justice of the United States.  28 U.S.C. §§ 292(d), 294(d).  This careful balance was crafted by Congress, and "if that statute is to be changed, it is for Congress, not for [the courts] to change it." *Am.-Foreign*, 363 U.S. at 691.

Section 294(e) provides another basis for vacatur.  In 1944, Congress decided to impose strict limitations on the authority of retired judges, adding Section 294(e) to direct that "[n]o retired … judge shall perform judicial duties

---

[2]     In 1963, Congress enacted this very exception.  *See Moody v. Albemarle Paper*, 417 U.S. 622, 627 (1974).

except when designated and assigned." This "grants the chief judge … the discretion of determining what judicial duties a retired judge may perform" so that he will not undertake judicial duties if he is too "disabled, physically or mentally." *Steckel v. Lurie*, 185 F.2d 921, 924 (6th Cir. 1950). When Senator Kilgore introduced the law in the Senate, he explained that it was drafted to prevent a retired judge from "interfer[ing] in courts as he desires." 87 Cong. Rec. 4679 (1941). And when Representative Walter introduced the bill in the House, he explained that it would provide a check on retired judges who "think they can function" even after they cannot. 90 Cong. Rec. 3872 (1944). Like the statutes in *American-Foreign* and *American Construction*, which barred certain judges from performing certain judicial functions, Section 294(e) is jurisdictional.

### C.   The "de facto officer" doctrine does not excuse the jurisdictional defect here.

Judge Scullin's lack of authority cannot be excused under the de facto officer doctrine, which, in certain contexts, confers validity upon acts performed by a person acting under color of official title, even if it is later determined that the title is deficient. *Ryder v. United States*, 515 U.S. 177, 180 (1995). The doctrine arose out of the fear that "chaos" would ensue if actions taken by government officials could later be invalidated because of technical defects. *Id.* A product of the 15th century, *SW Gen. v. NLRB*, 796 F.3d 67, 81 (D.C. Cir. 2015), the doctrine has fallen out of favor in recent decades, *id.*; *Silver v. USPS*, 951 F.2d 1033, 1036

9

n.2 (9th Cir. 1991) ("The continued vitality of the de facto officer doctrine is in serious doubt …."); *Roell v. Withrow*, 538 U.S. 580, 598-99 (2003) (Thomas, J., dissenting).

The de facto officer doctrine applies only to minor technical defects. *Nguyen v. United States*, 539 U.S. 69, 78 (2003).  Where there is a violation "of a statutory provision that 'embodies a strong policy concerning the proper administration of judicial business,'" the judgment is void—even when the "defect was not raised in a timely manner."  *Id.* (quoting *Glidden Co. v. Zdanok*, 370 U.S. 530, 536 (1962) (plurality op.)).  The doctrine does not apply here for four independent reasons.

*First*, *Frad* is directly on point, and it did not excuse the defect in designation based on the de facto officer doctrine.  This Court should follow *Frad*. *Rodriguez de Quijas v. Shearson/Am. Express*, 490 U.S. 477, 484 (1989) ("If a precedent of [the Supreme Court] has direct application in a case, yet appears to rest on reasons rejected in some other line of decisions, the Court of Appeals should follow the case which directly controls ….").

*Second*, the defect in Judge Scullin's authority was not "merely technical." The Supreme Court has affirmed the actions of a de facto judge only after "some effort has been made to conform with the formal conditions on which [his] particular powers depend."  *Nguyen*, 539 U.S. at 79.  Thus, in *Ball v. United States*,

140 U.S. 118 (1891), a visiting judge had de facto authority when he was designated to assume the duties of a disabled judge but continued to preside after the judge's death.  *Id.* at 128-29.  In *McDowell v. United States*, 159 U.S. 596 (1895), the Court found that a visiting judge had authority because "[t]he order of designation was regular in form, and there was nothing on its face to suggest that there was any vacancy" rendering it invalid.  *Id.* at 601.  And in *Ex Parte Ward*, 173 U.S. 452 (1899), the Court found de facto authority based on a judge's recess appointment.  *Id.* at 455.[3]

But where there is a violation of a statute "concerning the proper administration of judicial business," the de facto officer doctrine cannot save the judgment.  *Nguyen*, 539 U.S. at 78-79 (discussing *Am. Constr.*, 148 U.S. at 387, and *Cramp & Sons v. Int'l Curtis Marine Turbine*, 228 U.S. 645, 650 (1913) (vacating decisions—despite the parties' forfeiture or waiver—because a judge who participated in the case below had violated a statutory bar against also hearing the case on appeal)).  Where a statute "embodies weighty congressional policy concerning the proper organization of the federal courts," the Court must remand

---

[3]      Writing for a plurality in *Glidden*, Justice Harlan suggested that *Ball* applied the de facto rule because the challenge was brought by "a private litigant" while *Frad* did not because it was brought by the government "on behalf of the public." 370 U.S. at 535.  *Frad* does not support this distinction.  Moreover, to the extent this distinction exists, the District is likewise "acting on behalf of the public" by defending its right to enforce an important public-safety statute.

"so that the case may be heard by a competent court, organized conformably to the requirements of the statute." *Id.* at 79 (brackets omitted).

Section 294 certainly reflects weighty considerations about judicial administration.  District court judges only have authority in the jurisdiction for which they were appointed by the President and confirmed by the Senate.  28 U.S.C. § 133(a).  They may sit outside their circuit only if the Chief Judge of the borrowing circuit can certify a need for the visiting judge, and only if the Chief Justice then designates the judge to satisfy that need.  28 U.S.C. § 294(d).  Nothing in the record suggests that either intended to take such action here.  In this way, the barrier to Judge Scullin's authority is not a "mere technicality"—it strikes at the very heart of the assignment statute, and is thus jurisdictional and not subject to the de facto officer doctrine.

*Third*, because the Chief Judge did not issue a certificate of necessity, there was no vacancy for a de facto judge to fill.  "[T]here can be no officer, either de jure or de facto, if there be no office to fill." *Norton v. Shelby Cnty.*, 118 U.S. 425, 444 (1886).  In *Annoni v. Blas Nadal's Heirs*, 94 F.2d 513 (1st Cir. 1938), a Puerto Rico governor designated a substitute judge to a case after the recusal of the appointed district court judge, but the statute only authorized a substitute when "necessary" and recusal was not one of the enumerated bases for necessity.  *Id.* at 514.  The First Circuit held the substitute's order "null and void" under *Norton*,

rejecting the de facto judge doctrine because, without a statutory "necessity," there was no "de jure office to be filled." *Id.* at 514-15.

The same defect exists here. Before there is a "vacancy" for a visiting judge, the Chief Judge must issue a certificate of necessity. *See* 28 U.S.C. § 294(d). This is not a technicality—since at least 1801, courts have had to demonstrate necessity before borrowing a judge from another jurisdiction. *See*, *e.g.*, 2 Stat. 97, § 23 (1801); 34 Stat. 1417, ch. 2940 (1907); 36 Stat. 1087, 1089, § 13 (1911); 42 Stat. 839, ch. 306 § 3 (1922); 62 Stat. 901, ch. 646 (1948). And as Chief Judge Kozinski of the Ninth Circuit recently explained, "[o]nly severe or unexpected over-burdening … will warrant" certifying such a need. *In re Motor Fuel Temperature Sales Practices Litig.*, 711 F.3d 1050, 1053 (9th Cir. 2013).

*Fourth*, the de facto officer doctrine does not apply because this is not a collateral attack on a judgment. As explained, the doctrine serves to prevent the "chaos" of judgments being challenged belatedly based on technical defects in a judge's title. *Ryder*, 515 U.S. at 180. This challenge arises on direct interlocutory appeal of Judge Scullin's order, and thus does not implicate the concerns the doctrine was designed to address.

Even in collateral attacks, this Court will not apply the de facto officer doctrine if the party raises the challenge "at or around the time the action is taken" and "the government has reasonable notice under all the circumstances of the

defect claimed." *Andrade v. Lauer*, 729 F.2d 1475, 1500 (D.C. Cir. 1984). This challenge meets both criteria: it comes just months after Judge Scullin's order, and this Court was on notice of the defect before the District learned of it. *See SW Gen.*, 796 F.3d at 82 ("Notice ensures that the agency has a chance to 'remedy any defects (especially narrowly technical defects) either before it permits invalidly appointed officials to act or shortly thereafter.'").

Indeed, even under normal forfeiture rules, it would be inappropriate to avoid the issue just because it was not addressed below.[4] This Court "ha[s] a fair measure of discretion to determine what questions to consider and resolve for the first time on appeal" and, in "exceptional circumstances," it will "allow consideration of issues not raised earlier." *Roosevelt v. DuPont*, 958 F.2d 416, 419 n.5 (D.C. Cir. 1992).

These are exceptional circumstances. Certificates of necessity and designation forms are not readily available.[5] Designation forms sometimes appear

---

[4]    Of course, if the defect is jurisdictional, there can be no forfeiture. *Frad*, 302 U.S. at 319.

[5]    Under the guidelines for intercircuit assignments, A. 4-7, certificates and designations are distributed to the clerks of the participating courts, and a permanent record is maintained by the Administrative Office of the United States Courts, A. 7. District counsel obtained the *Palmer* certificate only after numerous calls to (and the hard work of) the District Court Clerk, the D.C. Circuit Executive, and officials at the Committee on Intercircuit Assignments at the Administrative Office, and none has been able to locate a certificate or designation for this case.

14

on the docket, *Palmer* RD 20, but not always, *see, e.g.*, No. 03-cv-645 RD Entry 11/19/2004 (reassigning case to Court of International Trade judge without docketing designation form); No. 96-cv-1387 RD Entry 11/18/2004 (same); No. 94-cv-2814 RD Entry 11/18/2004 (same).  Before this Court ordered supplemental briefing, the District had no reason to question Judge Scullin's authority—it reasonably assumed that the clerk would not assign a case to a visiting judge unless he had been properly designated.  *See United States v. Armstrong*, 517 U.S. 456, 464 (1996) ("[C]ourts presume that [public officers] have properly discharged their official duties.").  Additionally, Judge Scullin's mistaken assignment affects more than the rights of the parties—it affects the integrity of the district court. *Roosevelt*, 958 F.2d at 419 n.5 (preserving the integrity of the judicial process is an exceptional circumstance); *see also Al Bahlul v. United States*, 792 F.3d 1, 6 (D.C. Cir. 2015) (excusing forfeiture to "safeguard[] the role of the Judicial Branch").

There is simply no good reason to strictly apply forfeiture here.  The rule is meant to protect the parties' right to be fully heard, promote judicial economy, and discourage litigants from a wait-and-see approach before raising dispositive issues. *District of Columbia v. Air Fla.*, 750 F.2d 1077, 1084-85 (D.C. Cir. 1984).  This case raises a pure question of law that is now fully briefed, *see Lesesne v. Doe*, 712

---

*Cf. Ohio Nat'l Life Ins. v. United States*, 922 F.2d 320, 327 (6th Cir. 1990) (explaining challenge of disproving a negative).

F.3d 584, 588 (D.C. Cir. 2013), and which is "antecedent" to the merits of this appeal, *see Arcadia v. Ohio Power*, 498 U.S. 73, 77 (1990).  And the District was unaware of this issue before the Court raised it on supplemental briefing, so this does not implicate *Air Florida*'s concerns about gamesmanship.  *Cf. Glidden*, 370 U.S. at 535 ("The [de facto] rule is founded upon an obviously sound policy of preventing litigants from abiding the outcome of a lawsuit and then overturning it if adverse upon a technicality *of which they were previously aware*." (emphasis added)).

Moreover, consideration of Judge Scullin's authority now will cause little delay.  This appeal comes at the beginning of ongoing litigation, and the preliminary injunction is the only substantive order Judge Scullin has issued.  The order does not speak to the past—it bars the District from enforcing an important public-safety law through *future* proceedings.  Those proceedings will presumably be heard by an authorized judge, and that judge should be able to consider the propriety of an injunction on the record.

The interests of justice therefore strongly support consideration of this matter now.  The District and the public it represents should not be barred from enforcing an important public-safety law while this case is litigated before a proper judge, when the judge who ordered the injunction had no authority to take any action in the case.

16

## CONCLUSION

This Court should vacate the preliminary injunction and remand the case to a district judge with appropriate authority.

Respectfully submitted,

KARL A. RACINE
Attorney General for the District of Columbia

TODD S. KIM
Solicitor General

LOREN L. ALIKHAN
Deputy Solicitor General

/s/ Holly M. Johnson
HOLLY M. JOHNSON
Assistant Attorney General
Bar Number 476331
Office of the Solicitor General

Office of the Attorney General
441 4th Street, NW, Suite 600S
Washington, D.C. 20001
(202) 442-9890
(202) 715-7713 (fax)
October 2015                           holly.johnson@dc.gov

17

## ADDENDUM

Certificate of Necessity (June 23, 2011).................................................................1

Designation of Judge Scullin (July 1, 2011)...........................................................2

Notice of Designation of a Related Case (February 3, 2015)................................3

Guidelines for the Intercircuit Assignment of Article III Judges (2012)..............4

AO 81
(Rev. 12/10)

# JUDICIAL CONFERENCE OF THE UNITED STATES
## COMMITTEE ON INTERCIRCUIT ASSIGNMENTS

### CERTIFICATE OF NECESSITY

Pursuant to 10 U.S.C. § 942(f) or 28 U.S.C. § 291(a), 292(d) or (e), 293(a), or 294(d), and the Guidelines for the Intercircuit Assignment of Article III Judges, I certify that a need exists for the designation and assignment of a United States judge from another circuit (or special court) to perform judicial duties in the following court:

United States District Court for the District of Columbia

Name and Title of Judge to be assigned:

Frederick J. Scullin, Jr.

Senior Judge, Northen District of New York

Period of assignment:

from _____ through _____

**OR**

Specific case(s):  10cv1646, 08cv1199, 09cv1482, 10cv985, 10cv2109, 09cv96,

06cv1216, 02cv603, 08cv77, 06cv1652

This requested assignment is for the period or purpose stated, and for such time as needed in advance to prepare and to issue necessary orders, or thereafter as required to complete unfinished business.

*Signature of Chief Judge*

U.S. Court of Appeals for the District of Columbia Circuit

*Name of Circuit (or special court)*

Date: 06/23/2011

**Please fax the signed form to the Committee on Intercircuit Assignments at (202) 502-2278.**

## DESIGNATION AND ASSIGNMENT
## OF A SENIOR UNITED STATES JUDGE
## FOR SERVICE IN ANOTHER CIRCUIT

The Chief Judge of the United States Court of Appeals for the District of Columbia

Circuit has certified that there is a necessity for the designation and assignment of a judge from

another circuit or another court to perform judicial duties in the United States District Court for

the District of Columbia in 10cv1646, 08cv1199, 09cv1482, 10cv985, 10cv2109, 09cv96,

06cv1216, 02cv603, 08cv77, and 06cv1652. The

## HONORABLE FREDERICK J. SCULLIN, JR.

a Senior Judge of the United States District Court for the Northern District of New York has

consented to such designation and assignment.

NOW, THEREFORE, pursuant to the authority vested in me by Title 28, United States

Code, section 294(d), I do hereby designate and assign the Honorable Frederick J. Scullin, Jr., to

perform judicial duties in the United States District Court for the District of Columbia for the

period or purpose stated and for such time as needed in advance to prepare and to issue necessary

orders, or thereafter as required to complete unfinished business.

**CHIEF JUSTICE OF THE UNITED STATES**

Washington, D.C. JUL - 1 2011

A True copy WILLIAM K. SUTER
Test:
Clerk of the Supreme Court of the United States
By _____
Chief Deputy

**A. 2**

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

NOTICE OF DESIGNATION OF RELATED CIVIL CASES PENDING
IN THIS OR ANY OTHER UNITED STATES COURT

Civil Action No. _____
(To be supplied by the Clerk)

<u>NOTICE TO PARTIES:</u>

Pursuant to Rule 40.5(b)(2), you are required to prepare and submit this form at the time of filing any civil action which is related to any pending cases or which involves the same parties and relates to the same subject matter of any dismissed related cases. This form must be prepared in sufficient quantity to provide one copy for the Clerk's records, one copy for the Judge to whom the cases is assigned and one copy  for each defendant, so that you must prepare 3 copies for a one defendant case, 4 copies for a two defendant case, etc.

<u>NOTICE TO DEFENDANT:</u>

Rule 40.5(b)(2) of this Court requires that you serve upon the plaintiff and file with your first responsive pleading or motion any objection you have to the related case designation.

<u>NOTICE TO ALL COUNSEL</u>

Rule 40.5(b)(3) of this Court requires that as soon as an attorney for a party becomes aware of the existence of a related case or cases, such attorney shall immediately notify, in writing, the Judges on whose calendars the cases appear and shall serve such notice on counsel for all other parties.

_____

The plaintiff , defendant or counsel must  complete the following:

I.    <u>RELATIONSHIP OF NEW CASE TO PENDING RELATED CASE(S).</u>

A new case is deemed related to a case pending in this or another U.S. Court if the new case:  [Check appropriate box(e's) below.]

[ ]    (a)    relates to common property

[X]    (b)    involves common issues of fact

[X]    (c)    grows out of the same event or transaction

[ ]    (d)    involves the validity or infringement of the same patent

[ ]    (e)    is filed by the same pro se litigant

2.    <u>RELATIONSHIP OF NEW CASE TO DISMISSED RELATED CASE(ES)</u>

A new case is deemed related to a case dismissed, with or without prejudice, in this or any other U.S. Court, if the new case involves the <u>same</u> parties and <u>same</u> subject matter.

Check box if new case is related to a dismissed case:    [ ]

3.    NAME THE UNITED STATES COURT IN WHICH THE RELATED CASE IS FILED (IF OTHER THAN THIS COURT):

_____

4.    CAPTION AND CASE NUMBER OF RELATED CASE(E'S).  IF MORE ROOM IS NEED PLEASE USE OTHER SIDE.

**Tom G. Palmer, et al.** _____ v. _____ **District of Columbia & Cathy Lanier** _____ C.A. No. **09-1482**

**Feb. 3, 2015** _____        /s/ Alan Gura

DATE        Signature of Plaintiff/Defendant (or counsel)

**A.3**

USGA Case #15-7057   Document #1576620   Filed 10/05/2015   Page 29 of 35

711 F.3d 1050, 13 Cal. Daily Op. Serv. 3007, 2013 Daily Journal D.A.R. 3579

**(Cite as: 711 F.3d 1050)**

# Guidelines for the
# Intercircuit Assignment of Article III Judges

Approved by the Chief Justice
February 16, 2012

Authority for the assignment of United States judges to courts in other circuits or to special courts is vested in the Chief Justice, as provided in **Chapter 13 of Title 28, United States Code.** To assist the Chief Justice in discharging this responsibility, the Judicial Conference of the United States authorized the appointment of the Committee on Intercircuit Assignments, with staff support to be provided by the Director of the Administrative Office of the U.S. Courts. The Guidelines for such assignments are:

1. A federal judge has responsibility: first, to the particular court of which he or she is a member; second, to the other courts within his or her own circuit; and third, to courts outside his or her circuit.

2. The chief judge of the borrowing circuit must certify the necessity for a judge to be assigned from another circuit. Assignment of judges from their statutory bases will be on the basis of the need of the borrowing circuit. This standard governs the assignment of both active and senior judges.

3. Circuits in need of assistance should forecast their needs as much as possible and advise the Committee of the type of help, courts (and dates) in which help is needed, and the number of judges that may be required.

4. The primary source of intercircuit assignments should be senior judges although active judges may be used if the court would not be burdened by their absence or when necessary to comply with a court of appeals local rule requiring that at least one active circuit judge sit on a panel of the court.

5. Intercircuit assignments of judges with fewer than five years on the bench should occur only in limited circumstances (e.g., a newly appointed judge who previously served as a U.S. attorney in the district may assist courts outside the circuit if his or her caseload is significantly reduced due to disqualification of himself or herself from proceedings because of his or her knowledge of cases prior to judicial appointment).

6. A court that lends an active judge to another circuit may not borrow from another circuit within the same time period of the assignment; a court that borrows an active judge may not lend an active judge within the same time period of the assignment. (This rule does not apply to senior judges or judges assigned to a particular case(s).)

7. The lender/borrower rule may be relaxed in appropriate situations provided the chief judge of the lending circuit (or other court) is consulted to assure the needs of that circuit (or other court) are met first.

8. When an active judge is borrowed or lent for a particular case or cases due to the disqualification of all judges in the borrowing circuit or in other emergency situations, the lender/borrower rule does not apply.

**\*1057**

A. 4

USGA Case #15-7957   Document #1576620         Filed 10/05/2015         Page 30 of 35
711 F.3d 1050, 13 Cal. Daily Op. Serv. 3067, 2013 Daily Journal D.A.R. 3579

**(Cite as: 711 F.3d 1050)**

page 13

Guidelines for the Intercircuit Assignment of Article III Judges                    Page 2

9.    In the event all judges of a given circuit disqualify themselves, the chief judge thereof shall notify the Chair of the Committee on Intercircuit Assignments who, in consultation with the Chief Justice, will select a judge or panel of judges as the case may be.  To avoid the appearance of impropriety or conflict of interest, judges of the borrowing circuit, once recused, will not participate in the selection of the visiting judge or judges.

10.   Courts of appeals should make an effort to have a visiting judge serve for a regular sitting, as defined by that court.  However, if necessary to meet an appellate court's needs, assignments for periods of two or three days (particularly with respect to an appellate judge sitting for a district judge) will be processed.  Only in an extraordinary situation will an intercircuit assignment to a court of appeals for one day be processed.  If circumstances result in a minor rescheduling of the dates of an approved intercircuit appellate sitting, no modification of the authorization is necessary.

11.   A judge assigned to work on the general calendar of a district court should serve for at least two weeks.  However, an assignment to a district court for a particular case is made without regard to specific dates.

12.   Long-term assignments for no more than a six-month interval may be approved for judges in adjacent or nearby courts and senior judges who have moved residence to another circuit.  Requests for long-term assignments for other reasons will be considered on a case-by-case basis in emergency situations.

13.   All intercircuit assignments will be for the period or case[s] specified, and for such time as needed in advance to prepare, and thereafter as required to complete unfinished business.  It is stressed, however, that no judge should take any official action in a case in another circuit in the absence of a completed intercircuit assignment, *i.e.,* until the assignment has been approved by the Chief Justice and that approval has been filed in the borrowing court. (Participation in settlement efforts alone does not necessitate an intercircuit assignment).

14.   Intercircuit assignments are not permitted for non-case specific activities such as wedding and naturalization ceremonies.

15.   A visiting judge, if deemed necessary by the judge, may be accompanied by up to two members of his or her staff.  The borrowing court will be expected to furnish additional supporting personnel as required.  (For the purposes of this guideline, "staff" includes the judge's secretary and law clerks and, if the borrowing court is unable to provide them, a courtroom deputy clerk and/or a court reporter).  Travel performed by chambers and court staff in connection with an intercircuit assignment is subject to the provisions of the Judiciary Staff Travel Regulations pertaining to the authorization of travel to a location outside the geographic boundaries of the home court. *Guide to Judiciary Policy,* Vol. 19, §§ 420.20.60(a) and 420.30.15(b).

© 2015 Thomson Reuters. No Claim to Orig. US Gov. Works.

A. 5

711 F.3d 1050, 13 Cal. Daily Op. Serv. 3067, 2013 Daily Journal D.A.R. 3579

**(Cite as: 711 F.3d 1050)**

page 14

Guidelines for the Intercircuit Assignment of Article III Judges                Page 3

## Operating Procedures

**A.     Forms**

- Certificate of Necessity

Pursuant to 10 U.S.C. § 942(f) or 28 U.S.C. § 291(a), 292(d), 292(e), 293(a), or 294(d), and the ICA Guidelines, the chief circuit judge (or chief judge of a special court) certifies that there is a need for a judge to be assigned from another circuit (or special court).

- Consent Form for Senior Judges

Pursuant to 28 U.S.C. § 294(d), senior judges may consent to their own assignments. However, as indicated on the form, senior judges are to consult with their chief circuit judges (and chief district judges, if applicable) before formally consenting to an intercircuit assignment, to ensure that the needs of their courts are sufficiently met such that there is no objection to the proposed intercircuit assignment.

- Consent Form for Active Judges

Pursuant to 28 U.S.C. § 295, intercircuit assignments for judges in active status require the consent of their chief circuit judge (judges of the Court of International Trade in active status need the consent of their chief judge). Where applicable, chief district judges should be consulted to ensure that the needs of the district are sufficiently met such that there is no objection to the proposed intercircuit assignment.

- Consent Form for Retired Justices

Pursuant to 28 U.S.C. § 294(a), a retired Chief Justice or Associate Justice of the Supreme Court certifies that he or she is willing to undertake an assignment to another court.

**B.     Processing Intercircuit Assignments**

It should be noted initially that a substantial majority of intercircuit assignments are undertaken by senior judges, and that the great majority of intercircuit assignments are arranged informally between the borrowing court and the affected judge. However, the Committee always stands ready to (and does) assist in identifying and obtaining judges who are willing and able to be of assistance to courts in need.

The appropriate way to initiate a formal request for an intercircuit assignment is for a circuit chief judge to send a Certificate of Necessity to the Chair as soon as arrangements for the assignment are confirmed. If time is pressing, because an intercircuit assignment requires processing through the Committee, the Administrative Office, and the Chief Justice, the Certificate should be submitted via e-mail or through the Intercircuit Assignments Database System (ICADS). It is ideal if the borrowing circuit can submit its Certificate of Necessity one month or more in advance of the assignment. Upon receipt of a Certificate of Necessity, Committee staff will send a Consent to Assignment form via e-mail to the applicable judge for signature. A copy of the e-mail will also be sent to the lending court's chief circuit judge, chief district judge (if applicable), and circuit executive. Senior judges can consent to their own assignments, after consulting with the chief judge of their courts to determine that the "needs at home" are met first. However, active district and circuit judges need the written consent of their

© 2015 Thomson Reuters. No Claim to Orig. US Gov. Works.

**A.6**

**\*1059**

Guidelines for the Intercircuit Assignment of Article III Judges                     Page 4

circuit chief judge or, for active judges of the Court of International Trade, the chief judge of that court.  All forms with an electronic signature must be submitted either via e-mail or through ICADS.

Once both the Certificate of Necessity and Consent to Assignment forms are received, the Chair or, in the instance of an intercircuit assignment of the Chair, the longest serving member of the Committee, will submit the Committee's recommendation to the Director of the Administrative Office.  The Director will prepare a proposed designation order and forward it with the Committee's recommendation and all supporting material to the Chief Justice for review and approval.

Upon approval by the Chief Justice, all documents will be returned to the Director for distribution of the designation and assignment order to the clerks of the lending and borrowing courts, as provided by 28 U.S.C. § 295, and to the circuit executives for the lending and borrowing circuits.  The relevant chief judges and the visiting judge with be provided copies of the order upon request.

The permanent records of intercircuit assignments are maintained by the Administrative Office of the United States Courts.

**\*1060** *Appendix B*

**711 F.3d 1050, 13 Cal. Daily Op. Serv. 3067, 2013 Daily Journal D.A.R. 3579**
**(Cite as: 711 F.3d 1050)**

AO 81
(Rev. 12/10)

# JUDICIAL CONFERENCE OF THE UNITED STATES
## COMMITTEE ON INTERCIRCUIT ASSIGNMENTS

### CERTIFICATE OF NECESSITY

Pursuant to 10 U.S.C. § 942(f) or 28 U.S.C. § 291(a), 292(d) or (e), 293(a), or 294(d), and the Guidelines for the Intercircuit Assignment of Article III Judges, I certify that a need exists for the designation and assignment of a United States judge from another circuit (or special court) to perform judicial duties in the following court:

Name and Title of Judge to be assigned:

Period of assignment:

from _____   through _____

**OR**

Specific case(s): _____

This requested assignment is for the period or purpose stated, and for such time as needed in advance to prepare and to issue necessary orders, or thereafter as required to complete unfinished business.

_____
*Signature of Chief Judge*

_____
*Name of Circuit (or special court)*

Date: _____

**Please fax the signed form to the Committee on Intercircuit Assignments at (202) 502-2278.**

*Appendix C*

© 2015 Thomson Reuters. No Claim to Orig. US Gov. Works.

**A. 8**

USCA Case #15-7057    Document #1576620         Filed: 10/05/2015       Page 34 of 35
711 F.3d 1050, 13 Cal. Daily Op. Serv. 3067, 2013 Daily Journal D.A.R. 3579
**(Cite as: 711 F.3d 1050)**

AO 82B
(Rev. 12/10)

# JUDICIAL CONFERENCE OF THE UNITED STATES
## COMMITTEE ON INTERCIRCUIT ASSIGNMENTS

### CONSENT FOR AN ACTIVE JUDGE

As required by 28 U.S.C. § 295, I consent to the following intercircuit designation and assignment of a United States judge in active status.  (If this involves a district judge, the chief judge of the lending district court has been contacted and does not object to this assignment.)

Name of judge to be assigned: _____

Title of judge to be assigned: _____

Court from which judge will be assigned: _____

Court to which judge will be assigned: _____

Period of assignment:

from _____     through _____

**OR**

Specific case(s): _____

_____

I understand that this assignment is for the period or case(s) stated, and for such time as needed in advance to prepare and to issue necessary orders, or thereafter as required to complete unfinished business.

_____
*Signature of Chief Judge*

_____
*Name of Circuit (or special court)*

Date: _____

**Please fax the signed form to the Committee on Intercircuit Assignments at (202) 502-2278.**

C.A.9,2013.

In re Motor Fuel Temperature Sales Practices Litigation

711 F.3d 1050, 13 Cal. Daily Op. Serv. 3067, 2013 Daily Journal D.A.R. 3579

END OF DOCUMENT

## CERTIFICATE OF SERVICE

I certify that on October 5, 2015, electronic copies of this brief were served through the Court's ECF system, to:

> Alan Gura, Esq.
> Gura & Possessky, PLLC
> 105 Oronoco Street, Suite 305
> Alexandria, VA 22314

/s/ Holly M. Johnson
HOLLY M. JOHNSON

## CERTIFICATE OF COMPLIANCE

I further certify that this brief complies with the type-volume limitation in Federal Rule of Appellate Procedure 32(a)(7)(B) because the brief contains 3,987 words, excluding exempted parts. This brief complies with the typeface and type style requirements of Federal Rule of Appellate Procedure 32(a)(5) and (6) because it has been prepared in a proportionally spaced typeface using Microsoft Word 2010 in Times New Roman 14 point.

/s/ Holly M. Johnson
HOLLY M. JOHNSON