IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| BRIAN WRENN, et al., | ) Case No. 15-CV-162-CKK |
| Plaintiffs, | ) |
| v. | ) |
| DISTRICT OF COLUMBIA, et al., | ) |
| Defendants. | ) |

MEMORANDUM OF POINTS AND AUTHORITIES IN REPLY TO DEFENDANTS' OPPOSITION
TO PLAINTIFFS' MOTION FOR STAY OF PROCEEDINGS

ARGUMENT

Defendants claim that this case should proceed full steam ahead in this Court, notwithstanding the impending appellate decision that might upend all the proceedings and render pointless the parties' various approaches to the litigation, because "[t]he only factor that the Circuit will consider that will have an even passing relevance to the issues presently pending in this Court is whether plaintiffs can establish that they are likely to succeed on the merits." Opp. at 4.

Well, yes—allegedly, the "only factor" on appeal is whether either side has a case.[1] At one end of possibility, the D.C. Circuit might hold that Plaintiffs have zero chance of success because there is no right to carry a gun in the District of Columbia, or because the standard for evaluating infringements of that right is so deferential as to require nothing more than a recitation of the City Council's reasoning. At the spectrum's other end, the D.C. Circuit might hold that Plaintiffs have a

---

[1] "Allegedly," because this seems unlikely. Defendants would presumably argue that this Court erred in finding that Plaintiffs were irreparably harmed, and Plaintiffs will argue that they satisfied all four prongs of the preliminary injunction test.

100% chance of success on the merits because the challenged rules work a destruction of the right that can never be sanctioned, regardless of the evidence or any standard of review. And one can easily imagine a host of other possible outcomes that, while less dramatic, would practically end this litigation, one way or another, or at the very least require the parties to re-imagine their approach to the resolution of this dispute.

To be sure, there may be a "heavy burden" to stay proceedings where a stay would "prevent [a] plaintiff from having its day in court," when it is "unclear" how long other proceedings "will take to complete," raising the prospect of a case "languish[ing] for years" as "evidence may be lost and memories fade." *DSMC, Inc.* v. *Convera Corp.*, 273 F. Supp. 2d 14, 31 (D.D.C. 2003). But this is hardly such a case. The D.C. Circuit's proceedings are not open-ended, and the appellate court is required to turn around a decision on the matter expeditiously per 28 U.S.C. § 1657(a). Nor is the fading of memories or loss of evidence to the ravages of time a relevant concern in a case that ought not to require *any* discovery (see *infra*).

For all of Defendants' protests, it remains unknown what possible harm, exactly, they might suffer by the staying of this case for a very short time to see what the D.C. Circuit might have to say about the matter. In the parties' Rule 16.3 report, Defendants ask that summary judgment pleadings conclude in this case by mid-February of next year. The appeal will most likely have been argued, if not decided, by then. Defendants claim they have "waited more than a year to undertake discovery in a case that is casting a shadow over a critical public safety law." Opp. at 1; *id*. at 7.

But whatever does that mean? What is this nebulous "shadow?"

Many laws are controversial. Many people assert that this or that law is unconstitutional, with or without acting on those assertions by initiating litigation. Assuming that this is a "critical public safety law," *nothing now impedes Defendants' enforcement of that law*. Defendants are not

suffering any sort of psychic harm or mental anguish because the legality of their actions is questioned. If Defendants had any qualms about this law, they should not have enforced it, though they do not appear to doubt the correctness of their position. And even should Defendants prevail in this litigation, they will never silence the Plaintiffs or the innumerable other critics who will persist in exercising their fundamental First Amendment right to cast "shadows" on the legitimacy of these and many other District laws.

In contrast, the harm to Plaintiffs in denying them relief would be palpable. We are talking about full-blown (and pointless) discovery, including experts, at a time when the Plaintiffs will be busy briefing and arguing the same case, over the same exact issue, in the Court of Appeals. The waste of judicial resources would also be obvious, because even absent any extensions of time, this Court will not have much chance to decide the case before the Court of Appeals effectively does.

And what, exactly, is the *real* point of discovery? Plaintiffs have no information regarding the adoption or enforcement of these regulations that is not already known to Defendants. Certainly the Plaintiffs were not involved in promoting these regulations, nor do they enforce them. All the evidence that the Defendants might wish to produce is within their possession and control—and all of it concerns *legislative*, rather than *adjudicative*, facts, which are within judicial notice.[2] "[J]udicial access to legislative facts" is unconstrained by "any limitation in the form of

---

[2] Adjudicative facts are facts "concerning the immediate parties who did what, where, when, how, and with what motive or intent. . . . They are the facts that normally go to the jury in a jury case." *Association of Nat'l Advertisers, Inc.* v. *FTC*, 627 F.2d 1151, 1161 (D.C. Cir. 1979) (internal quotation marks omitted). "By contrast, the nature of legislative fact is ordinarily general, without reference to specific parties." *Id.* "[L]egislative facts are crucial to the prediction of future events and to the evaluation of certain risks, both of which are inherent in administrative policymaking . . . Because legislative facts combine empirical observation with application of administrative expertise to reach generalized conclusions, [L]egislative facts . . . need not be developed through evidentiary hearings." *Id.* at 1162.

indisputability, any formal requirements of notice other than those already inherent in affording opportunity to hear and be heard and exchanging briefs, and any requirement of formal findings at any level." Fed. R. Evid. 201 advisory committee's note.

Accordingly, Defendants are free to cite any general criminological data point that they wish. To be sure, the Second Amendment does not "require judges to assess the costs and benefits of firearms restrictions and thus to make difficult empirical judgments in an area in which they lack expertise." *McDonald* v. *City of Chicago*, 561 U.S. 742, 790-91 (2010). "The constitutionality of the challenged statutory provisions does not present factual questions for determination in a trial." *Moore* v. *Madigan*, 702 F.3d 933, 942 (7th Cir. 2012). But if, as Defendants claim, the case turns on whether the City Council had a sufficient basis upon which to enact the challenged provisions, then the unchallenged legislative record, itself a subject of judicial notice, will speak for itself and be ascribed whatever value it might be ascribed by this Court. It will not, however, be discovered from Plaintiffs, or from any third party.

As Defendants are fond of pointing out, this is not the first federal case to have challenged such may-issue carry laws. Dozens of federal judges at the district and appellate level have considered these laws, and each of these diverse jurists who has opined has thus far not hesitated to reach a forceful conclusion as to the constitutionality of these laws. But few of these cases involved any discovery whatsoever, let alone experts (!) opining as to whether or not the law is constitutional. By all means, let the Defendants offer into evidence whatever the City Council considered in enacting these regulations. But if Defendants did not submit enough evidence to show a basis for their laws challenged in an earlier Second Amendment case, that has nothing to do with the fact that in *this* case, there is no role for discovery.

Finally, there is nothing incongruent about staying district court proceedings while plaintiffs seek an interlocutory appeal that might resolve the entire case. This is a standard feature of federal litigation. Plaintiffs often choose to seek a preliminary injunction, where possible, to avoid having to wait five years for a decision on regular dispositive motions (as was the case in *Palmer*).

Defendants are flatly wrong in seeking to distinguish this case from *Ezell* v. *City of Chicago*, N.D. Ill. 10-5135, "because the parties here are not asking this Court to award any permanent relief now that might conflict with any forthcoming decision from the Circuit." Opp. at 5. The Defendants are seeking to march toward summary judgment, which could very well conflict with a D.C. Circuit opinion holding that Plaintiffs are likely to succeed because the law is unconstitutional (or because Defendants' intermediate scrutiny framework is erroneous, or inapposite). In *Ezell,* the Seventh Circuit did just that—effectively strike down the law on the plaintiffs' preliminary injunction appeal—and the case ended that very day, at least as far as that law was concerned. It was repealed the same morning, within hours of the Seventh Circuit's decision. Of course, the opposite has been known to happen. For example, in *Jackson* v. *City and Cnty. of San Francisco*, N.D. Cal. 09-2143, the District Court stayed the case pending the Plaintiffs' preliminary injunction appeal (see Dkt. 154, filed Dec. 31, 2012). When the plaintiffs lost their case on appeal and could not obtain certiorari, they quit. *Id*. Dkt. 168 (Sept. 3, 2015).

## CONCLUSION

The Court has broad discretion to manage its docket—and to spare itself, the Plaintiffs, the city's beleaguered taxpayers, and other litigants requiring judicial resources, from the pointless multiplication of litigation that will all but certainly be resolved, or at least deeply re-shaped, by an impending D.C. Circuit decision. Defendants remain free to enforce their law, which will always be shrouded by controversy regardless of the case's outcome. But the city's government and its police

chief will not, in any way, be harmed by a stay. There is nothing to discover, and a stay will not bar Defendants from gathering whatever social science they wish to submit in the unlikely case that summary judgment motions are ever required here. Allusions to "shadows" do not add up to real injury, and certainly not when compared to the real injury of continuing this litigation full-speed while it is being effectively resolved at the Court of Appeals.

Respectfully, the parties should be left to brief and argue the appeal in peace.

Dated: April 14, 2016                                    Respectfully submitted,

                                                  Alan Gura (D.C. Bar No. 453449)
                                                  Gura & Possessky, PLLC
                                                  916 Prince Street, Suite 107
                                                  Alexandria, VA 22314
                                                  703.835.9085/Fax 703.997.7665

By:  /s/ Alan Gura
       Alan Gura

       Attorney for Plaintiffs