## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

BRIAN WRENN, *et al.*,
        Plaintiffs

v.                                                    Civil Action No. 15-162 (CKK)

DISTRICT OF COLUMBIA, *et al.*,
        Defendants

## MEMORANDUM OPINION and ORDER
(April 15, 2016)

In this case, Plaintiffs Brian Wrenn, Joshua Akery, Tyler Whidby, and the Second Amendment Foundation, Inc., challenge several provisions of the District of Columbia's licensing scheme for carrying handguns in public, including the permissive nature of the scheme and the "good reason/other proper reason" requirement for obtaining a concealed carry handgun license. On March 7, 2016, the Court denied Plaintiffs' [6] Motion for Preliminary Injunction, and the Court has set an Initial Scheduling Conference for May 9, 2016. Meanwhile, Plaintiffs have filed an interlocutory appeal of the Court's order denying the motion for preliminary injunction and have moved this Court to stay this case pending the resolution of the interlocutory appeal. Upon consideration of the pleadings,[1] the relevant legal authorities, and the record for purposes of this motion, the Court DENIES Plaintiffs' [59] Motion to Stay Proceedings.

## I. BACKGROUND

The Court reviewed the background of this case in its Memorandum Opinion regarding the denial of Plaintiffs' motion for preliminary injunction. *See Wrenn v. D.C.*, No. CV 15-162

---

[1] The Court's consideration has focused on the following documents:
- Pls.' Mot. to Stay Proceedings ("Pls.' Mot."), ECF No. 59;
- Defs.' Opp'n to Pls.' Mot. ("Defs.' Opp'n"), ECF No. 60; and
- Pls.' Mem. of Points & Auth. in Reply to Defs.' Opp'n ("Pls.' Reply"), ECF No. 62.

(CKK), 2016 WL 912174, at *2 (D.D.C. Mar. 7, 2016). The Court reserves further discussion of the relevant background for its discussion of the motion now before the Court.

## II. LEGAL STANDARD

" '[T]he power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants. How this can best be done calls for the exercise of judgment, which must weigh competing interests and maintain an even balance.'" *Air Line Pilots Ass'n v. Miller*, 523 U.S. 866, 880 (1998) (quoting *Landis v. North American Co.*, 299 U.S. 248, 254-255 (1936)); *see also Clinton v. Jones*, 520 U.S. 681, 706 (1997). Moreover, a party requesting a stay of proceedings "must make out a clear case of hardship or inequity in being required to go forward, if there is even a fair possibility that the stay for which he prays will work damage to some one else." *Landis*, 299 U.S. at 255.

## III. DISCUSSION

At the outset, it is important to emphasize, as Plaintiffs do, that Plaintiffs are requesting a stay of further proceedings in this case, not a stay of this Court's prior Order. Specifically, Plaintiffs seek to stay these proceedings pending the resolution of Plaintiffs' interlocutory appeal by the United States Court of Appeals for the District of Columbia Circuit ("D.C. Circuit"), with respect to this Court's denial of their request for a preliminary injunction. Both sides refer the Court to various other cases in which a court has stayed its proceedings pending the outcome of other proceedings—whether on appeal or otherwise. However, the question of whether to stay a particular case is inextricably intertwined with the nature of the specific case. Accordingly, a lengthy discussion of other cases where courts have granted or refused stays would not facilitate the resolution of the essential question before this Court: have Plaintiffs shown that a stay is

proper in this case, at the present time, given the interlocutory appeal now before the D.C. Circuit? With that in mind, the Court proceeds to consider the circumstances in this case, "weigh[ing] competing interests and maintain[ing] an even balance," as the Court must. *Air Line Pilots Ass'n*, 523 U.S. at 880.

Plaintiffs argue that the D.C. Circuit's resolution of the appeal will, at a minimum, provide substantial guidance to this Court going forward and, moreover, will "all but certainly resolve" the merits of this case. Pls.' Reply at 5. Therefore, they argue, a pause of proceedings before this Court is in the interest of judicial economy. Plaintiffs also argue—consistent with their general position—that discovery is unnecessary for a determination on the merits in this case. Defendants argue, in response, that the D.C. Circuit's decision on the interlocutory appeal is unlikely to be dispositive with respect to the merits of this case; that continuing with these proceedings is in the interest of judicial economy; and that additional delay will prejudice the District. Therefore, Defendants seek to proceed to a period of discovery, followed by the briefing of dispositive motions. *See* Parties' Local 16.3 Report, ECF No. 61.

The Court turns first to Plaintiffs' arguments regarding the place of discovery in this case. While the motion to stay does not directly ask the Court to resolve questions regarding discovery, it is necessary to address the question of discovery at a basic level because the Court's evaluation of the motion to stay depends, in part, on the nature of the proceedings that would take place absent a stay. In other words, it is possible—although not certain—that the equities regarding a stay would differ regarding cases proceeding directly to discovery and cases proceeding to dispositive motions. Moreover, the Court has the benefit of the parties' Local 16.3 Rule Report, prepared in advance of the Initial Scheduling Conference, in which the parties set out their positions regarding discovery and other future proceedings. *See* ECF No. 61. Therefore, the

Court considers the place of discovery in this case before turning to the parties' other arguments regarding the requested stay.

With respect to discovery, Plaintiffs suggest that the record in this case is limited to the materials before the Council of the District of Columbia ("D.C. Council") when it enacted the challenged legislation. *See* Pls.' Reply at 4. Yet, as this Court previously noted, the D.C. Circuit has emphasized that it is necessary to assess the evidentiary record assembled by the parties in order to determine whether the means chosen by the District of Columbia contribute to the governmental interests identified by the District " 'in a direct and material way,' whether in one of the ways anticipated by the D.C. Council or otherwise.' " *Heller v. District of Columbia*, 801 F.3d 264, 275 (D.C. Cir. 2015) *(Heller III)* (quoting *Turner Broad. Sys., Inc. v. FCC*, 512 U.S. 622, 662–64 (1994) (*Turner I*)); *see also Wrenn*, 2016 WL 912174, at *10. In other words, the District is not limited to defending the challenged statutory scheme on the basis of information that was before the D.C. Council at the time of enactment. Indeed, the D.C. Circuit, in what is known as *Heller II*, remanded the case to the district court for further evidentiary development because it could not adequately assess the constitutionality of certain provisions of the statutory scheme governing gun ownership on a record limited to the materials before the D.C. Council. *See Heller v. District of Columbia*, 670 F.3d 1244, 1258 (D.C. Cir. 2011) (*Heller II*). Indeed, on the appeal that followed that remand, in *Heller III*, the D.C. Circuit upheld certain elements of the statutory scheme explicitly on the bases of the evidence developed on remand, while it also concluded that other evidence developed was insufficient to uphold other features of the statutory scheme. *Compare Heller III*, 801 F.3d at 277 ("For the foregoing reasons, we believe the District has adduced substantial evidence from which it reasonably could conclude that fingerprinting and photographing registrants will directly and materially advance public safety … .") *with id.* at

278-79 ("The District has not presented substantial evidence to support the conclusion that its prohibition on the registration of 'more than one pistol per registrant during any 30–day period,' … 'promotes a substantial governmental interest that would be achieved less effectively absent the regulation.' ") (citations omitted); *see also Heller v. D.C.*, 814 F.3d 480 (D.C. Cir. 2016) (Mem.) (Millett, J., concurring in denial of rehearing *en banc*) (emphasizing "shortcomings in the record" before the *Heller III* court that undergirded that court's conclusions that certain provisions, including the one-pistol-per-month provision, were unconstitutional).

In light of the foregoing precedent from the D.C. Circuit, the Court is bound to permit a period of discovery. The nature and contours of that period will be discussed and determined at the May 9, 2016, Initial Scheduling Conference. However, the Court does not intend to entertain further argument on the necessity of discovery itself.

Before returning to the core question presented in Plaintiffs' motion to stay, the Court adds a final word with respect to Plaintiffs' argument regarding experts. Even beyond their commentary on the pointlessness of discovery in general, Plaintiffs further suggest that experts are improper in this case. *See* Pls.' Reply at 3-4 ("But few of these cases [upholding "good cause" licensing schemes] involved any discovery whatsoever, let alone experts (!) opining as to whether or not the law is constitutional."). Clearly, it is not the place of experts to opine on the ultimately legality of the challenged statutory scheme. But that basic proposition is immaterial here because experts *can*, in the proper circumstances, comment on other matters within their technical expertise that may arise in this case. Indeed, on the remand that followed the D.C. Circuit's decision in *Heller II*, the district court admitted expert testimony upon conducting the required analysis under *Daubert v. Merrell Dow Pharmaceuticals*, 509 U.S. 579 (1993). In *Heller III*, the D.C. Circuit then held that the district court had not abused its discretion in

admitting that testimony. 801 F.3d 271-72. Moreover, the *Heller III* court relied on the admitted expert testimony in resolving the merits of the challenges in that case. *Id.* at 275-77. This Court will determine the admissibility of any specific expert testimony in this case based on the merits of any such testimony ultimately presented; yet, in suggesting that expert testimony has no place in this type of litigation, Plaintiffs are simply off base.

In short, in suggesting that discovery is inappropriate in this case and, moreover, that experts have little place in any such discovery, the Court disagrees. Absent intervening contrary action by the D.C. Circuit, the next phase in this case will include a period of discovery, as Defendants have requested.

Having resolved that preliminary issue, the Court turns to the parties' arguments regarding the likely effect on these proceedings of the D.C. Circuit's resolution of Plaintiffs' interlocutory appeal. As noted above, Plaintiffs emphasize that any decision on appeal will strongly shape, if not wholly resolve, these proceedings. Citing to the Seventh Circuit's decision in *Ezell v. Chicago*, 651 F.3d 684 (7th Cir. 2011), Plaintiffs emphasize that, if this Court's denial of a preliminary injunction is reversed, the D.C. Circuit's decision may all but end this case in Plaintiffs' favor. They also suggest that, if the D.C. Circuit reaches the contrary result, Plaintiffs may deem it prudent to dismiss their case. Defendants, in response, emphasize that the question before the D.C. Circuit is a narrow one and, therefore, the resolution of it is unlikely to have a strong effect on these proceedings going forward. It is not necessary, here, to trace all of the contours of the parties' exchanges on this subject because the Court finds Plaintiffs' arguments regarding the future effect of any decision by the D.C. Circuit on the interlocutory appeal to be highly speculative. If it were *certain* that the D.C. Circuit's resolution of the interlocutory appeal would resolve this case, then there would be a strong argument for staying the case pending that

decision. But there is a wide distance between such putative certainty and the actual uncertainty of the impact of the D.C. Circuit's decision on the merits of this case. This gap is particularly wide given the emphasis of the *Heller II* and *Heller III* courts on the importance of a full factual record for resolving constitutional questions pertaining to the Second Amendment. In short, the sort of speculation in which Plaintiffs are engaging is not the proper basis for staying these proceedings.

Finally, it is necessary to consider the burdens and the benefits to the various parties affected by the choice whether to stay these proceedings or whether to move this case forward apace. Before addressing the impacts on Plaintiffs and Defendants themselves, the Court notes that Plaintiffs persist in relying on impacts to other parties, as if those impacts were their own. *See* Pls.' Reply ("The Court has broad discretion to manage its docket—and to spare itself, the Plaintiffs, the city's beleaguered taxpayers, and other litigants requiring judicial resources, from the pointless multiplication of litigation that will all but certainly be resolved, or at least deeply re-shaped, by an impending D.C. Circuit decision."). But Plaintiffs are in no position to represent the interests of the taxpayers of the District of Columbia in this case. While this is not the occasion to consider the nature of democratic representation, it is readily apparent that the only party in this case that can represent the interests of the District of Columbia, its citizens, and its taxpayers is the District of Columbia. With respect to the Court itself—and to the equities of other litigants before this Court raised by Plaintiffs—this question is tied closely to Plaintiffs' speculation about the D.C. Circuit's resolution of the interlocutory appeal. Once again, if it were *certain* that a decision on the interlocutory appeal would moot these proceedings, then going forward in this case at this time would be a needless use of judicial resources. But the impact of any such decision is, in actuality, far from certain. Concomitantly, it is simply imponderable,

from the vantage point of April 2016, what *ultimately* might be the most efficient use of the

Court's resources. Accordingly, the Court concludes that neither of these factors, which were

raised by Plaintiffs, weigh in favor of the stay.

The Court now turns to the effects on the parties themselves. Plaintiffs argue that the

harm to them of proceeding "would be palpable." Pls.' Reply at 3. They elaborate as follows:

"We are talking about full-blown (and pointless) discovery, including experts, at a time when the

Plaintiffs will be busy briefing and arguing the same case, over the same exact issue, in the Court

of Appeals." *Id.* In addition, Plaintiffs indicate generally that further proceedings in this Court

would be a waste of their time and resources—for essentially the same reasons that they argue

that moving forward would be futile, as discussed above. *See* Pls.' Mot. at 3, 5. Defendants, in

response, argue that they would be prejudiced by a delay in these proceedings because it would

"cast a shadow over the District's ability to enforce" the challenged statutory scheme. Defs.'

Opp'n at 7. Plaintiffs and Defendants also argue, respectively, that the other's claimed burdens

and prejudices are baseless.

The Court finds that neither side has demonstrated particularly strong equities weighing

in their favor. That is, Plaintiffs hardly elaborate on the alleged harm to them, which does not

seem to exceed the harm *necessarily* entailed in participating in this litigation, which they

instigated in the first instance. But it is also hard to see the practical impact of the "shadow"

identified by Defendants, other than the District's general desire for certainty and finality

regarding the constitutionality of its laws—which is understandable, but not dispositive

regarding the issue now before the Court. Ultimately, however, the Court agrees with Defendants

that Plaintiffs have not shown that the equities favor staying these proceedings at the present

time. Plaintiffs filed this litigation; Plaintiffs filed a motion for preliminary injunction; and

Plaintiffs have now filed an interlocutory appeal with respect to the denial of that injunction. They are wholly within their rights to take all of these steps, and the Court has no place in second-guessing Plaintiffs' litigation strategy. But Plaintiffs may not follow all of these steps and then be heard to complain that additional proceedings in this Court following the *usual* course of events are a waste of their resources.

In any event, the Court need not determine the relative weight of the equities to a moral certainty. It is Plaintiffs' burden in moving to stay this case to justify a stay in these circumstances. It is Plaintiffs who must show that it is proper to deviate from the normal course of the litigation process at this moment. The Court concludes that they have not done so. Plaintiffs' claims regarding the impact of further proceedings on their time and resources simply do not justify a pause in this litigation, particularly because this argument is substantially based on Plaintiffs' speculation about the downstream effect of the D.C. Circuit's resolution of the interlocutory appeal. Nor are their attempts to enlist, in their favor, the impact on the District's taxpayers, on the Court, or on other litigants any more successful. The Court concludes that Plaintiffs have not shown that a stay is proper at this time. Accordingly, the Court will not stay these proceedings at the present time, as Plaintiffs request, and will proceed to set out a period of discovery, as Defendants request, at the upcoming Initial Scheduling Conference.[2]

### IV. CONCLUSION AND ORDER

For the foregoing reasons, the Court hereby **ORDERS** that Plaintiffs' [59] Motion to Stay Proceedings is **DENIED**.

The Court will hold the Initial Scheduling Conference on May 9, 2016, at 10 a.m., as

---

[2] The Court notes that it is the Court's general practice to set a discovery schedule at the Initial Scheduling Conference but not to set a briefing schedule for any dispositive motions until the completion of discovery.

previously scheduled.

Dated: April 15, 2016

_____/s/_____
COLLEEN KOLLAR-KOTELLY
United States District Judge